## Harold L. Kaplan *v.* Michele E. Kaplan

Speziale, C. J., Peters, Parskey, Shea and Sponzo, Js.

Argued January 8—decision released March 2, 1982

*Francis J. Foley III,* for the appellant (plaintiff).

*Lois J. Lawrence,* for the appellee (defendant).

Speziale, C. J. This is an appeal by the plaintiff from the judgment of the trial court denying the plaintiff's motion for modification of periodic alimony. The plaintiff claims error in the trial court's failure to order a modification of alimony under the authority of § 46b-86 (b) of the General Statutes, the so-called "cohabitation" statute.

We first heard argument on this appeal on June 5, 1981, after which this court remanded the case with direction that the trial court, which had simply denied the plaintiff's motion, provide an articulation of the basis of its decision.[1] *Kaplan* v. *Kaplan*, 185 Conn. 42, 46, 440 A.2d 252 (1981). The articulation was filed in this court on September 25, 1981 and we have again heard argument by the parties.

The marriage between the plaintiff, Harold L. Kaplan, and the defendant, Michele E. Kaplan, was dissolved on May 26, 1978. Among other awards, the defendant received periodic alimony in the amount of $200 per week to continue until either her remarriage or the plaintiff's death. On April 17, 1980, the plaintiff filed a motion for modification of alimony under the authority of subsection (b) of General Statutes § 46b-86.[2] This provision states that the Superior Court may, in its discretion and after notice and hearing, modify an alimony award "upon a showing that the party receiving the peri-

---

[1] We ordered such a remand because this case presented the first opportunity for this court to consider § 46b-86 (b). It is the appellant's obligation to provide this court with an adequate appellate record. Practice Book § 3082. See *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222n, 435 A.2d 24 (1980). Ordinarily, we will not remand a case to correct a deficiency in the record which the appellant should have remedied.

[2] "[General Statutes] Sec. 46b-86. MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law.

"(b) In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a

odic alimony is *living with another person* under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a *change of circumstances* as to *alter the financial needs* of that party." (Emphasis added.) General Statutes § 46b-86 (b). The plaintiff has alleged that the defendant was living with another person under circumstances "tantamount to remarriage" and within the scope of § 46b-86 (b).

As we stated in our earlier opinion, *Kaplan* v. *Kaplan,* supra, 45–46, § 46b-86 (b) "requires the party moving for modification to show that the party receiving alimony is 'living with another person' and that this living arrangement has caused a 'change of circumstances' which 'alter[s] the financial needs' of the party receiving alimony. General Statutes § 46b-86 (b). We note that the General Assembly chose the broader language of 'living with another person' rather than 'cohabitation' and that this provision requires only a 'change' of circumstances not a 'substantial change' as required by § 46b-86 (a)." We also note that even after the required factual showings the ultimate decision is still entrusted to the *discretion* of the trial court. General Statutes § 46b-86 (b).

Section 46b-86 (b) was clearly intended by the General Assembly to apply to the situation alleged

final judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

by the plaintiff.[3] The articulation of the trial court, however, indicates that the plaintiff failed to prove his allegations. The trial court concluded that "[a]lthough at times the defendant slept in Dr. Doost's bedroom . . . and, Dr. Doost would often take meals with the defendant and her children, they maintained completely separate households and *were not living together.*" (Emphasis added.) [4] This factual finding on the threshold issue of whether the defendant "was living with another person" terminates the need for any further inquiry

---

[3] The stated purpose of the bill which was eventually enacted as Public Acts 1977, No. 77-394, now § 46b-86 (b), was "[t]o correct the injustice of making a party pay alimony when his or her ex-spouse is living with a person of the opposite sex, without marrying, to prevent the loss of support." H.B. 6174, 1977 Sess.

[4] The trial court's full articulation was as follows: "FURTHER ARTICULATION OF THE BASIS OF THE TRIAL COURT'S DECISION.

"The trial Court denied the motion for modification because of the facts found and conclusions reached, as follows:

"Subsequent to the dissolution, the defendant sold her home and, together with her two minor children, moved to 61 MacDonald Court in Noank which is a two-family house owned by Dr. Raier [sic] Doost. Dr. Doost was not only her landlord, but also her business partner and had a close social and personal relationship with the defendant. Although at times the defendant slept in Dr. Doost's bedroom (while the children slept downstairs) and, Dr. Doost would often take meals with the defendant and her children, they maintained completely separate households and were not living together. The defendant's tenancy is pursuant to a written lease and she paid Dr. Doost $300.00 per month rent.

"The defendant provided financially for all of the necessities for her children and herself. Dr. Doost made no financial contribution to the support of the defendant and her children. Dr. Doost did reimburse her for the cost of food but only for the cost of food which she provided for him. On her vacation trips with Dr. Doost, the defendant paid her own way.

"Both of two criteria must be met before periodic alimony could be modified in this case under the provisions of Section 46b-86 (b): (1) that the defendant was living with another person, and, (2) the living arrangements caused such a change of circumstances as to alter her financial needs. Neither criteria has been met. She was not living with Dr. Doost nor did her living arrangements alter her financial needs."

under § 46b-86 (b). The plaintiff urges that we hold this factual finding to be "clearly erroneous"; Practice Book § 3060D; but there is nothing in the record which would allow us to do so.[5] See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). This court, of course, may not retry a case. *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975). The fact-finding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court. See *Styles* v. *Tyler,* 64 Conn. 432, 450, 30 A. 165 (1894).

A factual finding may not be rejected on appeal merely because the reviewing judges personally disagree with the conclusion or would have found differently had they been sitting as the factfinder. Cf. *Gallo* v. *Gallo,* 184 Conn. 36, 44, 440 A.2d 782

[5] Both the concurring and dissenting opinions contend that it was "clearly erroneous" for the trial court to find as a matter of fact that the defendant and Dr. Doost "maintained completely separate households and were not living together." Although both the concurrence and the dissent have relied upon the uncontradicted evidence (from the testimony of the defendant and Dr. Doost, the only witnesses to testify at the modification hearing) to the effect that the defendant and Dr. Doost often traveled together and regularly slept and ate together, neither opinion mentions the equally uncontradicted evidence that the defendant and Dr. Doost maintained separate households, that both paid their own expenses on their trips, that the defendant paid rent on her apartment under a written lease, that the defendant paid her own living and household expenses and those of her children, and that Dr. Doost even paid for the meals which he ate in the defendant's apartment.

(1981). A factual finding may be rejected by this court only if it is "clearly erroneous." Practice Book § 3060D. The record of this case indicates that there was ample evidence to support the trial court's conclusion that the defendant and Doost maintained separate households and were not living together. It cannot be said, therefore, that the finding was as a matter of law unsupported by the record, incorrect, or otherwise mistaken. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 222. This court may not substitute its own opinion as to the living arrangements of the defendant for the factual finding of the trial court.

Our refusal to overturn the threshold factual finding in this case "does not constitute an abdication of our responsibility for appellate review. To the contrary it evidences a recognition on our part that by constitutional charter we are limited to corrections of errors of law; *Styles* v. *Tyler,* 64 Conn. 432, 450, 30 A. 165 (1894); and that, therefore, in matters of this sort our role of necessity is not to work the vineyard but rather to prune the occasional excrescence." *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980). We conclude that there are no grounds for disturbing the trial court's decision.

There is no error.

In this opinion PETERS and SPONZO, Js., concurred.

SHEA, J. (concurring). I disagree with the conclusion of the majority that nothing in the record would allow us to upset as "clearly erroneous" the factual determination of the trial court that the defendant and her paramour were not living together in the sense intended by § 46b-86 (b). The majority opinion fails to mention that both of them

testified that they slept together six nights out of seven in his bedroom on the second floor of the two-family house which he owned. The defendant and her children occupied the first floor for which they paid rent, but she had access to his apartment and the doors of both apartments were kept unlocked so that her children could go upstairs if they wished. They frequently had breakfast together and also dinner when he was not working. They had traveled together to Italy, Spain, Portugal, Philadelphia, New Hampshire, and Cape Cod. On some of those trips they took the children. When the defendant was asked how her relationship with Doost differed from a marriage, she answered simply that she supported herself. This response is virtually an admission that, except for financial arrangements, their relationship in every respect was equivalent to a matrimonial one. Not one of these facts was contradicted at the modification hearing. If six out of seven is not enough, I cannot imagine how much more togetherness the majority would demand to meet the statutory criterion of "living with another person." General Statutes § 46b-86 (b). In the face of the undisputed facts recited, to uphold a finding that the defendant and her lover were not living together defies reality and effectively converts the statute into a dead letter at the whim of the trial court.

On the other hand, the evidence produced at the hearing was insufficient to establish as a matter of law that the defendant's "living arrangements" had caused such a change of circumstances as to alter her financial needs. One unusual feature of the dissolution decree in this case is that the plaintiff husband agreed not to seek a modification of alimony because of the contemplated future employ-

ment of the defendant unless her net earnings exceeded $7500. The word "employment" is inappropriate to characterize the relationship in which the defendant chose to participate and which may have enhanced her financial situation in some degree by virtue of sharing certain expenses, such as housecleaning, food, and travel. Nevertheless, the evidence is far short of establishing the substantial change in the defendant's income which the parties contemplated as warranting a modification of alimony at the time of the judgment of dissolution. I would, therefore, affirm the conclusion of the trial court that no sufficient change in the financial needs of the defendant resulting from her living arrangement had been proved to satisfy that separate statutory requirement. Unlike remarriage, where a change in the financial circumstances of the alimony recipient has not ordinarily been deemed necessary for its termination; *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202 (1976); *Cary* v. *Cary,* 112 Conn. 256, 260–61, 152 A. 302 (1930); "living with another person" as a ground for modifying periodic alimony under § 46b-86 (b) is not sufficient unless it has resulted in altering "financial needs." *Kaplan* v. *Kaplan,* 185 Conn. 42, 45, 440 A.2d 252 (1981); see *McAnerney* v. *McAnerney,* 165 Conn. 277, 285–87, 334 A.2d 437 (1973). Accordingly, I concur in the result reached by the majority.

PARSKEY, J. (dissenting). This case cries out for reversal because the trial court's decision is clearly erroneous. Practice Book § 3060D.

General Statutes § 46b-86 provides for a modification of periodic alimony "upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court

finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party." We said in *Kaplan* v. *Kaplan,* 185 Conn. 42, 45, 440 A.2d 252 (1981) *(Kaplan I)* that the party moving for modification must "show that the party receiving alimony is 'living with another person' and that this living arrangement has caused a 'change of circumstances' which 'alter[s] the financial needs' of the party receiving alimony." Upon reflection and in order to effectuate the legislative purpose implicit in this statute we might have been well advised to have construed the statute so as to shift the burden of showing no change of financial circumstances to the alimony recipient upon a showing by the payor of the requisite living arrangement. 17 Journal of Family Law 249, 256 (1978–79). But accepting the earlier decision as stating the law of the case; *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 441 A.2d 49 (1981); the case still calls for reversal.

We have had just one occasion to construe the phrase "living with" another person. In *McPadden* v. *Morris,* 126 Conn. 654, 13 A.2d 679 (1940), we said (p. 659) "[t]he phrase 'living with him' and similar wording has uniformly been interpreted as meaning actually residing with, making a home with." We also cited with approval *Nelson's Case,* 217 Mass. 467, 105 N.E. 357 (1914), wherein the Massachusetts Supreme Judicial Court said (p. 469): " 'With whom she lives' . . . means living together as husband and wife in the ordinary acceptation and significance of these words in common understanding. They mean maintaining a home and living together in the same household, or

actually cohabiting under conditions which would be regarded as constituting a family relation. There may be temporary absences and incidental interruptions arising out of changes in the house or town of residence, or out of travel for business or pleasure.... The matrimonial abode may be a roof of their own, a hired tenement, a boarding house, a rented room or even a room in the house of a relative or friend, however humble or temporary it may be." "But there must be a home and a life in it."

By any objective standard, the defendant has been "living with another person" within the meaning of § 46b-86 (b). Although she and Doost possess separate addresses in a two-family house, it is apparent from the defendant's own testimony that she and Doost occupy the second floor while her children sleep downstairs. While the trial court found that the couple maintained separate households, the factual basis for this finding is obscure. To be sure there was testimony from the defendant and Doost to this effect but such testimony is conclusory. A conclusion cannot stand if it is not supported by subordinate facts; *Sanchione* v. *Sanchione,* 173 Conn. 397, 402, 378 A.2d 522 (1977); or if it is inconsistent with those facts. *Morris* v. *Costa,* 174 Conn. 592, 597, 392 A.2d 468 (1978). Unsupported conclusions are nothing more than factual flotsam. The undisputed facts here would support a conclusion that the defendant maintained a separate household downstairs for her children while she and Doost were living together upstairs. The facts that the defendant regularly slept upstairs with Doost, as often as six nights out of seven, that they regularly ate meals together, went on trips together and shared expenses could not support a finding that they were living apart in

separate households, however they chose to characterize their arrangement. If sharing bed and board is not the connubial paradigm envisaged by the statute then the legislative enactment, which can be so easily circumvented, has been reduced to a futile gesture.

While I agree with so much of the concurring opinion of Justice Shea as relates to the "living together" phase of the case, I do not construe the decree as he does. That portion of the decree which permits the defendant to receive net earnings from employment of $7500 without any modification of alimony has no relationship to the living together situation. A simple example will suffice. If the defendant remarried could she continue to receive alimony so long as her net earnings from employment did not exceed $7500? Of course not. The living arrangement contemplated by § 46b-86 (b) is tantamount to remarriage, the only difference being that, whereas in the case of a remarriage financial impact is immaterial, in the living arrangement situation, a financial impact must be shown.

That the defendant's nonmarital union with Doost has altered her financial needs is abundantly clear from her own testimony. On her financial affidavit the only income shown by the defendant is derived from the plaintiff's alimony and child support payments. The defendant admitted that since her divorce from the plaintiff she has traveled with Doost to Italy, Spain, Portugal, Cape Cod, Philadelphia and the White Mountains of New Hampshire. She also testified that she and Doost shared the expenses for these trips and that for her share she used the alimony and child support payments she received from the plaintiff. Since these pay-

ments were ordered to meet her financial needs and since expensive vacations were not listed on her financial affidavit as among those needs, unless the defendant had access to a financial genie, the conclusion that an alteration in her financial needs has resulted from her "togetherness" is inescapable. However loath we may be, ordinarily, to work the factual vineyard; *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980); if ever a case called for appellate pruning this is it. I would reverse and remand for further proceedings not inconsistent with this opinion.