## TOWN OF NEWINGTON v. GENERAL SANITATION SERVICE COMPANY

## TOWN OF NEWINGTON v. BALBOA INSURANCE COMPANY
### (12257)

PETERS, C. J., PARSKEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued February 13—decision released April 30, 1985

*James G. Geanuracos,* with whom, on the brief, was *Judith P. Lederer,* for the appellant-appellee (defendant Balboa Insurance Company).

*M. Donald Cardwell,* for the appellant-appellee (defendant General Sanitation Service Company).

*Edward G. Pizzella,* with whom was *Sidney L. Rosenblatt,* for the appellee-appellant (plaintiff).

SHEA, J. In this action[1] for breach of contract the trial court found the issues for the plaintiff town against the defendant General Sanitation Service Company (General) and its surety on the bond given to secure performance of the contract, the defendant Balboa Insurance Company (Balboa). In their appeal from the judgment the defendants claim that the court erred (1) in concluding that a material breach of contract justifying termination had occurred; (2) in calculating damages for the cost of completing the remainder of the contract based upon employment of another sanitation company which was not the lowest bidder for the job; (3) in allowing a recovery against the surety, Balboa, without its participation in the bidding procedure as provided by the contract; and (4) in awarding damages for the entire period of the contract rather

---

[1] The plaintiff brought separate actions against each defendant that were consolidated before trial.

than for only the period remaining until expiration of the performance bond. The plaintiff has cross appealed from the refusal to include an allowance for prejudgment interest in the damages awarded. We find no error in either the appeal or the cross appeal.

It is not disputed that on November 9, 1976, the plaintiff town entered into a refuse disposal contract with the defendant General for a period of five years, January 1, 1977, to December 31, 1981. As required by the contract, General posted security for its performance in the form of a surety bond for the calendar year 1977, the first year of the contract. A similar performance bond with the defendant Balboa as surety was filed for the calendar year 1978.

On July 14, 1978, the town notified the defendants by letter of numerous instances of untimely and incomplete refuse collection and also declared its intention to terminate the agreement for default in the event that the deficiencies specified should persist. On August 31, 1978, the town in another letter detailed many additional contract violations that had occurred after the previous notification and declared the contract "in default and terminated effective September 30, 1978." This letter also asserted a claim for damages.

The trial court concluded that the defendant General had defaulted in its performance of the contract and awarded damages of $240,218.35 less certain adjustments against the defendant General. The judgment against the defendant Balboa was limited to $130,159, the amount of the bond.

I

In attacking the conclusion of the trial court that the evidence proved a "just and legitimate cause" for the town to terminate the contract, the defendants maintain that the memorandum of decision fails to set forth

the subordinate facts found to support that conclusion. It is not claimed, however, that the evidence is insufficient to support the conclusion reached. Practice Book § 3060B requires that in nonjury trials "the court shall, either orally or in writing, state its decision on the issues in the case and, if there are factual issues, the factual basis of its decision." We have frequently indicated that if an appellant requires amplification or clarification of the factual basis of a decision to present his claims of error he should seek a further articulation from the trial court. *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 708, 448 A.2d 180 (1982); *Kaplan* v. *Kaplan,* 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222 n.5, 435 A.2d 24 (1980).

Fairly construed, the memorandum of decision adequately sets forth the subordinate facts relied upon for the conclusion of default reached by the trial court. It refers specifically to the two letters sent to the defendants that detailed numerous instances of delays in collecting refuse in certain areas of the town until after 6 p.m., the deadline for such collection activities as specified in the contract. Although these letters were admitted for the limited purpose of showing the correspondence between the parties prior to the suit and not for the truth of the facts contained therein, the memorandum notes that the complaint "closely follows" the grounds for termination detailed in these letters and finds that the plaintiff "has proven by a preponderance of the evidence that it had just and legitimate cause to terminate the contract as it did." Several residents of the town testified to their observations of failure to pick up refuse as scheduled. The court rejected the defendants' claims of a political motivation for termination on the part of the town and of its violation of the contract by changing the location

of the refuse disposal area. The memorandum expressly finds that delays in refuse collection "kept happening in various degrees each week" and that consequently "there was not that orderly, regular, stable, predictable or whatever refuse collection that was contemplated, expected and due under the contract." In the absence of a request for further articulation, this finding of subordinate facts sufficiently supports the court's conclusion of default.

## II

The trial court based its award of damages upon the increase in the cost of refuse collection and disposal to be incurred by the town for the thirty-nine months of the contract remaining after its termination on September 30, 1978. After receiving bids solicited from six rubbish collection companies, the award was made to Trash-Away of New Britain, which had bid $24.68 annually per unit. A slightly lower bid of $24.15 per unit was submitted by Nutmeg Sanitation. The defendants claim that the court erred in allowing damages based upon the Trash-Away bid rather than the lower Nutmeg bid.

The contract provided that in the event of default "the contractor shall pay the town, as liquidated damages, the amount of any excess of the new contract price over the contract price herein provided for, both pro-rated to the period of time covered by the unexpired term of the contract at the time of default." The trial court followed this provision in its award of damages. We agree with the defendants that the contract should not be construed to excuse the plaintiff from a duty to use reasonable care to minimize its damages. *Brown* v. *Middle Atlantic Transportation, Co.*, 131 Conn. 197, 199, 38 A.2d 677 (1944). The fact that a bid slightly higher than the lowest of the six received was accepted by the town and used as the basis for its cal-

culation of damages, however, does not necessarily imply a breach of this duty. Other factors, such as the responsibility, experience, qualifications and reputation of the bidders also warranted consideration. Some explanation of why Trash-Away was selected instead of Nutmeg, the lowest bidder, is contained in a letter from the plaintiff dated September 11, 1978: "Although Trash-Away's quotation is not the lowest of those submitted, it is second lowest and the Town has confidence that Trash-Away is the firm most likely to reestablish an adequate service level at this critical time based on its performance in other communities and our observations of its facilities, equipment and operating procedures." The defendants refer to no evidence indicating that Nutmeg was equally as qualified to perform the work as Trash-Away. The defendants had the burden of proving that the town failed to use reasonable care to reduce its damages. *Krawitz* v. *Ganzke,* 114 Conn. 662, 665, 159 A. 897 (1932); *Pollak* v. *Danbury Mfg. Co.,* 103 Conn. 553, 559, 131 A. 426 (1925). The trial court made no finding on this issue, nor have the defendants ever requested one by a motion for further articulation. *Kaplan* v. *Kaplan,* supra, 388 n.1. Under these circumstances, especially in view of the slight difference between the bids, we find no support for the defendants' claim that reasonable care was not exercised by the plaintiff to mitigate its damages.

## III

The defendant Balboa claims that it has been relieved of its obligation by the admitted failure of the town to follow a provision of the bond stipulating that "[t]he cost of completion shall be fixed by taking bids from at least three responsible contractors chosen by obligee and surety." It is argued that this provision created a condition precedent to the liability of Balboa on the bond. We disagree.

The bond provided that, upon default of the principal, the "Surety will either (a) within fifteen (15) days of determination of such default take over and assume completion of said Contract and become entitled to payment of the balance of the Contract price, or (b) pay Obligee in cash for reasonable cost of completion, less the balance of the Contract price including retained percentage." No claim is made that Balboa ever sought to exercise its first alternative, performance of the remainder of the contract. The second, therefore, became applicable and Balboa became obligated to pay for the reasonable cost of completion. "Its liability was a contingent one until the contract had been breached. The moment that the breach occurred its liability became a fixed and absolute one and, within the limits of the penal sum of the bond, was measured by that of the [principal]." *Bridgeport* v. *Aetna Indemnity Co.,* 91 Conn. 197, 205, 99 A. 566 (1916).

The provision relied upon by Balboa simply provided a method for determining the amount to be paid by Balboa pursuant to the second alternative of payment for the reasonable cost of completion. In no way did it restrict the town in the actual award of the new contract for refuse collection. If Balboa had sought reasonably to exercise its rights under this provision, however, the cost of completion for the purposes of establishing the amount of its obligation could have been determined in the manner prescribed. Balboa was notified on August 31, 1978, that the contract was in default and would be terminated on September 30, 1978. On September 11, 1978, it was advised that the town favored acceptance of the bid from Trash-Away, the second lowest bidder, based upon its performance in other communities and upon observations of its facilities, equipment and operating procedures. In this communication the town requested Balboa to indicate whether it would recognize the procedure followed with

respect to bid solicitations as sufficient under the terms of the bond. Balboa's reply of September 21, 1978, in addition to a general reservation of its rights, declared that since Nutmeg was the lowest bidder, it would not recognize an award to a higher bidder. Balboa, however, made no attempt, either then or later to implement the provision for participation by the surety in the solicitation of bids from "three responsible contractors." Balboa, which had been informed of the six bids received, apparently was satisfied that no further bids were needed because it requested none. As previously discussed, it has no right to insist that damages be based upon the Nutmeg bid without proof that Nutmeg was equally as qualified as Trash-Away and that the town failed in its duty to use reasonable care to mitigate its damages.

## IV

The final claim of Balboa is that its liability is limited to the damages which accrued only during the period from termination of the contract on September 30, 1978, until the expiration of the bond on December 31, 1978. The contract required the defendant General to post a bond with a licensed surety "in the full amount of the pro-rata annual cost for service for the next ensuing calendar year, guaranteeing the full performance of this contract in accordance with its terms." A bank account passbook in the same amount could have been substituted. The bond in question was dated April 13, 1978, and covered the period January 1, 1978, to December 31, 1978. A new bond was required to be filed each year of the contract and a similar bond had been posted for the calendar year 1977.

If we were to uphold the contention of the defendant Balboa that only the losses accruing during the duration of the bond are covered, it is obvious that the protection afforded by the security provision of the con-

tract would often prove illusory. Defaults occurring late in the life of the bond would result in coverage of only the small portion of the loss which accrued before expiration of the bond, leaving wholly unsecured the balance of the loss which would accrue during the remaining duration of the contract.

"The fact that the risk has terminated does not affect any liability of the insurer which has already arisen; any cause of action on the insurance contract which has vested remains vested and is not terminated by the fact that the insurer ceases to be liable for loss sustained after such termination." 9 Couch, Insurance 2d (Anderson) § 39:204. Under the contract General was obligated upon default to "pay the town, as liquidated damages, the amount of any excess of the new contract price over the contract price herein provided for, both pro-rated to the period of time covered by the unexpired term of the contract at the time of default." As surety Balboa became similarly obligated, upon failing to exercise its right to take over performance of the contract, within the face amount of $130,159, to pay "the reasonable cost of completion, less the balance of the Contract price including retained percentage," in the language of the bond.[2] Upon default the cause of action of the town against both defendants became vested for the damages it would eventually sustain over the remaining life of the contract. "The fact that the full measure of the damages sustained by the insured cannot be determined without reference to acts and events existing or occurring subsequent to the termination of the risk is not material if the loss was initiated during the continuance of the risk, for in such case the cause of action by hypothesis arose or vested during

---

[2] No issue has been raised with respect to the variation in the phraseology of the bond from that of the contract concerning the measurement of damages. Accordingly we have no occasion to consider the significance of the discrepancy. See Practice Book § 3063; *Berchtold* v. *Maggi*, 191 Conn. 266, 274, 464 A.2d 1 (1983).

the period of the continuation of the risk." Id., § 39:205. The claim that Balboa is not liable for the portion of the loss incurred by the town after the date of termination of the risk on the bond, December 31, 1978, is of no merit.

## V

In the cross appeal the plaintiff town claims that the court erred in failing to allow for prejudgment interest in the awards of damages against each defendant. General Statutes § 37-3a allows the recovery of interest in civil actions "as damages for the detention of money after it becomes payable . . . ." We have construed the statute to make the allowance of interest depend upon "whether the detention of the money is or is not wrongful under the circumstances." *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 (1971). "The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court." *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553 (1973). We have seldom found an abuse of discretion in the determination by a trial court of whether a detention of money was "wrongful." *State* v. *Stengel,* 192 Conn. 484, 487–88, 472 A.2d 350 (1984); cf. *Loomis* v. *Gillett,* 75 Conn. 298, 53 A. 581 (1902).

In this case, although the memorandum of decision does not explain the refusal of the trial court to allow interest as sought, there are several circumstances disclosed by the record supporting the exercise of its discretion. The action, which was commenced on November 17, 1978, soon after default, was not brought to trial until February, 1983. Although some of this pretrial delay may have been attributable to the defendants, the court may well have concluded that the plaintiff town also had failed to pursue the case with proper diligence. It also does not appear that the town

presented to the court any interest calculation setting forth the amount of interest which would have accrued from the time each of the periodic losses involved had been sustained. We find no error in the cross appeal.

There is no error.

In this opinion the other judges concurred.