[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO COMPEL SALE OF PROPERTY (#203.00)
This case comes to this court wherein the moving party Kendall A. Elsom (hereinafter called the ex-husband) moves that the court compel Rowan D. Elsom (hereinafter called the ex-wife) to sell CT Page 3430 property known as 13 Massiello Circle, Westport, Connecticut. The parties modified their agreement in 1974 after they had their marriage dissolved on June 19, 1973. The modification provided that the wife could remain in the premises as long as she was unmarried. Paragraph 12 of the original Agreement provided "[f]or the purposes of this Agreement, the wife shall be deemed to be `remarried' in the event she marries another, which marriage is legally recognizable in the State of Connecticut, or if she resides with another under such circumstances that are equivalent to the state of marriage, notwithstanding the fact that no lawful marriage ceremony may have been performed."
It is clear that the wife is living with someone else and has been for a substantial period of time. The question in this court's mind is whether or not the moving party has sustained his burden of proof that she has remarried under the definition of the Agreement. The court reviews this definition to be two prongs. (1) She must reside with someone and (2) the circumstances must be such that they are equivalent to the state of marriage.
No evidence was offered to establish that the circumstances are equivalent to the state of marriage. The wife was asked if she cohabited and she said yes and she was asked if she lived together with a man and she said yes. This court finds a substantial difference between living together, cohabiting and living together under circumstances that are equivalent to the state of marriage.
In Powers v. Powers, Superior Court Judicial District of Fairfield at Bridgeport Family 20, 35, 59 (July 5, 1985) Judge Harrigan had an opportunity to discuss "living together whether or not the relationship was legally recognizable in the State of Connecticut." This court notes that he did not have before him the standard of living together under circumstances that are equivalent to the state of marriage which is a higher burden of proof. Under Christiano v. Christiano, 131 Conn. 589, 597 (1945) which said post dissolution sexual activity alone does not equal cohabitation or living together. Judge Harrigan searched out indicia of living together. Judge Harrigan went on to say "professions of love, vacationing together, the giving or exchanging of gifts, concern for the children of a prior marriage, taking meals at table, giving or attending social affairs together, are all consistent with the activities of people contemplating marriage or people already married. Certainly, discussions of marriage plans is not unexpected when love is professed." CT Page 3431
In Kaplan v. Kaplan, 186 Conn. 387 (1982), the court said at page 396 . . . marital abode may be a roof of their own, a hired tenement, a boarding house, a rented room or even a room in the house of a relative or friend however humble or temporary it may be". "But their must be a home and a life in it." (See, also McKinney v. McKinney, 6 C.S.C.R. 10, 11 Stamford 1991 discussing this issue.)
The instant definition of remarriage sounds close to a common law marriage with words of per verba de praesenti. This court views this standard to be more than a sexual relationship. Marriage has its good times and its bad times. It is holding hands and walking on the beach drinking Pina Colada. It is fighting over trivial matters. It is making up. It is enjoying common activities together. It is enjoying growing old together. It is taking care of one another when they are sick. It is all of the things embodied in the standard exchanging of vows which encompass a relationship for better or for worse. No evidence has been produced under the Harrigan rational, the Kaplan rational or the Karazin analysis. No evidence has been presented that this relationship has made it to the standards set forth in the Agreement as to remarriage. Had they wanted merely a living together arrangement, they could have said that. They had an opportunity when they amended the Agreement to incorporate a new definition of remarriage, yet they failed to do so. For all of the foregoing, the motion to compel the sale of property is denied.
KARAZIN, J.