[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this divorce, the court adopted the parties' agreement as part of the judgment. The divorce decree stated that the defendant was to pay alimony to the plaintiff until December 31, 2003. The alimony was to be terminated upon the death of the plaintiff or the cohabitation or remarriage of the plaintiff.
The defendant has filed a motion requesting that the court modify the order of alimony because the plaintiff has been cohabitating with another man. The plaintiff has denied this.
A hearing was held on November 7, 1996, at which both parties and other witnesses testified. The defendant claims to have proven that an Andrew Hatton has been living in the plaintiff's house since September, 1995 and was still living there as of the date of the hearing on November 6, 1996. He also claims that Hatton was romantically involved with the plaintiff, and that early in the relationship from July, 1995 until Hatton moved in and thereafter that they hugged and kissed each other. He also claimed to have proven that at night Hatton went upstairs to the plaintiff's bedroom, even though his bedroom was on the first floor.
The plaintiff claims that the defendant presented no evidence of a sexual relationship between her and Hatton or that they were living together as husband and wife. She claims to have proven that Hatton's residence in her home had no impact upon her financial situation because he rarely worked while at the plaintiff's house, and contribute nothing to her support. Her claim is that they had no romantic relationship. They have separate bedrooms and bathrooms and Hatton resides in an area which is really a separate apartment from the main living area of the house. CT Page 7461
The court finds that the plaintiff and Hatton had a romantic relationship from July, 1995 when he was visiting the plaintiff and at times staying over night. Hatton testified that he was courting the plaintiff between July and September of 1995, but that the relationship did not go anywhere. He moved into the house to use a room as his studio because he was an artist and painted pictures of houses. The court does not find credible the testimony of the parties' son, Travis Simpson to the effect that his mother and Hatton acted "like a couple, they acted like family." Nor does it find credible the testimony that he heard Hatton going upstairs to his mother's bedroom at night. The court does find that Hatton and the plaintiff did not have such nocturnal visits. Hatton testified to this.
The court further finds the testimony of Travis to be tainted because of several things. He was resentful of Hatton because his mother gave him money. He felt his mother should have given him more money rather than provide for Hatton's needs. He also vowed to "get even" with his mother for having him removed from the house after an altercation with Hatton at which time the police were called.
The court is firmly convinced that, after an initial period of a romantic relationship prior to the time Hatton became a full-time lodger, there was no involvement of the plaintiff and Hatton. The court does find that Hatton lived in the plaintiff's house from September, 1995 until the present. But the court does not find that they lived together as husband and wife. Conn. Gen. Stat. § 46b-86(b) states that alimony may be suspended or terminated "upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the . . . termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."
Case law defines cohabitation as dwelling "in the same place in the manner of husband and wife." Wolk v. Wolk,191 Conn. 328, 332 (1983).
In 1977, the legislature enacted Conn. Gen. Stat. § 46b-86(b) in order to "correct the injustice of making a party pay alimony when his or her ex-spouse is living with a person of CT Page 7462 the opposite sex without marrying, to prevent the loss of support." H.B. 6174, 1977 SESS. During this trial no evidence was presented to show that but for the potential loss of alimony the plaintiff would marry Hatton. In fact, the testimony was just the opposite.
In the Kaplan case, the wife testified she slept with the alleged cohabitant several nights a week in his bedroom, had meals together and travelled to Italy, Spain and Portugal. Nevertheless, the court found that the wife was not "living together" with the alleged cohabitant. The court, in a concurring opinion by Justice Shea, stated that the evidence failed to establish that the "living arrangements" had caused such a change of circumstances as to alter the wife's financial needs. Kaplan v. Kaplan, 186 Conn. 387, 393 (1982).
In this case, as in Kaplan, the living arrangements have not caused such a change in circumstances as to alter the plaintiff's financial needs.
Thus, the court finds that the defendant has failed to prove that the plaintiff's financial needs were altered as required by the statute or that she was living with another as husband and wife as required by case law.
Accordingly, the Motion for Modification is denied.
D. Michael Hurley Judge Trial Referee