[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION de POST JUDGMENT MOTIONS
The marriage of the plaintiff husband and the defendant wife was dissolved by judgment entered March 11, 1988 in this court. The decree incorporated a separation agreement of the parties.
There are two children of the marriage, Michael Jr., d.o.b. February 7, 1978, currently a college freshman, and Amy E. d.o.b. August 26, 1983. The parties agreed that the defendant would have sole custody of the minor children and that the plaintiff would pay $500 per month for each child until August 31, 1996 when Michael's payments would stop and Amy's would increase to $750 per month. The husband also agreed to pay summer camp expenses to a maximum of $500 per child until age 16 attained. The plaintiff also agreed to maintain the children on his employer's medical insurance and to pay all such expenses not covered by insurance. In addition, the plaintiff agreed to pay for the reasonable college expenses of each child for four years. The plaintiff, an attorney, filed a financial affidavit dated February 29, 1988 (file document 125) listing his income as:
 Gross 1987 K-1 (income est.) $237,700 Deductions totaling for taxes 90,896 -------- Net Annual Income $146,804
In addition to the forgoing partnership distributions, his firm paid $13,000 for client development expenses in 1987. He was then a partner in Kelley, Drye Warren working at their Stamford, Connecticut office. The parties joint 1987 U.S. Form 1040 (Defendant's Exhibit #A) bears out the estimated figures listed on his 1988 affidavit except for $20,742 derived from Bainbridge Ltd. listed on IRS Form 4797 as $13,276 capital gain from the same source and passive and nonpassive losses totaling $16,567 listed on Schedule E. Total income on line 22 lists $258,542. His affidavit lists $71,400 for income tax whereas the return lists $66,174 with $5,387 self employment tax. The court concludes that the plaintiff's estimated 1987 income was fairly made and was so close to the final figures that the trial judge, in assessing the plaintiff's income, could not have been misled, despite the fact that the other income and nonpassive losses were not estimated.
His area of emphasis shifted from real estate to bankruptcy in or about 1989 and he was asked to relocate to the firm's New York City office. His bankruptcy work brought him to the CT Page 3159 attention of Arnold Porter, a national law firm, who hired the plaintiff for their New York office as a contract partner at a guaranteed annual salary of $400,000 until December 31, 1996[1]
(Plaintiff's Exhibit #1).
The plaintiff married Lynn Canning shortly after the parties' dissolution. One child, Sarah, d.o.b. 3/21/92, has been born to the union. On or about April, 1993 the parties' son, Michael, moved to his father's home. The parties agreed to this change of residence. The plaintiff stopped paying child support as of July, 1993. For the next three school years the plaintiff paid the tuition and other costs to permit Michael to attend The Peddie School, a boarding school. The Peddie cost totaled $14,600 in 1993, $24,500 for 1994 and $23,000 for 1995. Michael is now attending Holy Cross, paid for by his father.
The defendant also seeks to impeach the plaintiff's 1988 financial affidavit so that she may seek a "recession and reformation" of the separation agreement pursuant to Article XIV, Paragraph 14.1, claiming that the plaintiff's financial affidavit contained material omissions. The plaintiff omitted his $133,278 capital account at his law firm although he listed a loan taken to fund the account. He listed a $40,000 loan twice, both on the affidavit. He did not state a value for his tangible personal property but subsequently listed a value of $100,000 (Defendant's Exhibit C) on a credit application. As to the first item, it was easily discoverable. The court notes that the separation agreement states in Article III, Paragraph 3.1 personal property that the plaintiff shall retain, free of any claim of the defendant "b. His interest in the law firm of Kelley, Drye Warren. Should not have this item prompted the defendant to inquire as to its value? As to the second item, inquiry of the plaintiff would have revealed the double listing. As to the last item, discovery or a deposition would have uncovered values. The court notes that the defendant listed no value for either the furniture and furnishings of the home or for her jewelry (Defendant's Exhibit F, 1988 financial affidavit). This case went to judgment before Billington v. Billington, 220 Conn. 212 (1991) was decided and basic due diligence by her counsel was in order.
The court lists the following motions as the ones the parties agreed were to be heard by the court when the hearing began on November 6, 1996. The court believes the following list is necessary so that the issues can be decided. CT Page 3160
I. Plaintiff's Motion to Modify Alimony and Child Support and Motion to Modify Custody both dated June 17, 1993 (136)
The foregoing motions were served via order to show cause with court date of August 6, 1993.
II. Defendant's Motion for Modification of Alimony, Child Support and Visitation, and for Contempt and Counsel fees dated August 3, 1993 (#134).
III. Plaintiff's Amended Motion to Modify Alimony and Child Support dated August 20, 1993.
The amendments alleged that the defendant has been cohabiting with one Robert Carpenter and that the plaintiff has built a bedroom for Michael.
IV. Defendant's amended Motion for Modification dated August 31, 1993 (#142) added additional prayers for relief, asking that the arrears for alimony and child support be found and that the Plaintiff's advance consent for medical of the children be modified.
V. The Defendant's Motion for Attorney's Fees (#144) dated September 20, 1993; the Defendant's Motion for Order (#151) dated December 21, 1995
The latter motion seeks to deal with the parties' dispute over the children's medical care.
VI. The Defendant's Supplemental Motion for Order (#155) dated October 24, 1996 seeks to deal with prescriptions for the children and the Plaintiff's refusal to pay for certain courses taken by the Defendant at Yale Divinity School.
Michael's change of custody was agreed upon by the parties as being in the best interest of their son who was experiencing some difficulty both in and after school. After the son moved to the father's home, the defendant brought the motion to modify custody and support. Service on defendant was made on August 3, 1993. Pursuant to Section 46b-86 (a) retroactivity of any child support order was preserved to that date.
The plaintiff's direct support of Michael, coupled with The Peddie School expenses, far exceed the court ordered sum of $500 CT Page 3161 monthly. The court finds that the plaintiff has fully discharged his duty to support his son. The child support order for Michael is reduced to zero as of August 3, 1993. The custody modification is now moot.
The plaintiff alleges that the alimony order should be terminated based on the separation agreement provision Article V, Paragraph 5.3 that states:
 "5.3 Husband's alimony obligation to Wife shall cease on his death or the death, remarriage or cohabitation of Wife or December 31, 1999 whichever date or event shall first occur."
The defendant became engaged to Robert Carpenter in 1989. He stored some furniture at the defendant's house. He worked around her house. He acted as her escort to various places or events. They traveled to Disney World with the parties' children. The defendant admitted he slept on the couch in her house and on at least three Saturday nights slept with her more or less monthly. The defendant admitted she had a sexual relationship with him.
The term "cohabitation" is not defined in the parties' agreement. The plaintiff relies on Milhalyak v. Milhalyak,30 Conn. App. 516 (1993) that the defendant's alleged cohabitation triggered termination automatically upon cohabitation just as death or remarriage would have. Mrs. Milhalyak admitted orally and by written stipulation
 ". . . to living with a man at the former marital house . . . under the same roof and sharing the same bed." Id., p. 518.
Neither the present case nor the cited case implicated Sec.46b-86. However, the cited case does not undertake to define cohabitation since it accepted the trial court's finding of cohabitation and Mrs. Milhalyak did not challenge that finding.
Here we have no such admission. The plaintiff next citesD'Ascanto v. D'Ascanto, 237 Conn. 481 (1966) which did define cohabitation by reference to Sec. 46b-86 (b) which state "living with another person", a phrase that the court points out is broader than "cohabitation". The case further points out that:
"Whether an individual is living with another person is CT Page 3162 a fact specific determination." Id., p. 486.
Mrs. D'Ascanto's companion slept at her house seven nights a week, was identified by her children as their stepfather and traveled with her and her children. The trial court found they were living together. On appeal she did not challenge that finding. The case also cites Kaplan v. Kaplan, 185 Conn. 42, 45, on appeal after remand, 186 Conn. 387 (1982) which is helpful in that Justice Parsky's dissent cited McPadden v. Morris,126 Conn. 654 wherein the phrase "living with him" and similar wording had been interpreted to mean uniformly as actually residing with, making a home with.
The proof in the present case falls far short of cohabitation. There was no merger of households. The plaintiff's motion to terminate alimony on this basis is denied.
Conversely, the defendant seeks an increase in alimony, relying on the plaintiff's increased income, and her own lack of good fortune. The defendant's original motion (#134) did not request retroactivity of either child support or alimony nor did the amended motion (#142). The defendant did not comply with Sec.52-50 in service of either motion and cannot claim the benefit of Sec. 46b-86 (a). The court does not read Shedrick v. Shedrick,32 Conn. App. 147 (1993) to permit the defendant to receive the benefits of the plaintiff's rule to show cause that explicitly claimed retroactivity.
The defendant was not employed at the time of the dissolution. She is presently employed part-time by the Town of Greenwich in its Department of Social Services earning a gross of $330 and a net weekly after taxes of $284. She is paid $21.75 hourly (Defendant's Exhibit TT). She receives $42,000 periodic alimony annually. Her current gross is $59,160, but with the raise it approaches $60,000. The defendant has a master's degree in education and 30 hours towards her Ph.D. The defendant has done little to hone her employment skills in recent years.
The plaintiff has remarried and has a young child to support and educate. The parties' agreement commits him to the college education of the children in Article XI. He has undertaken this responsibility for Michael.
The court is mindful that the defendant remained engaged to a man for over four years who apparently was unable to display any CT Page 3163 ability to support the defendant. The defendant admitted the engagement ended due to economic reasons.
She has not taken advantage of Article XVIII "Re-Education of Wife" wherein the plaintiff agreed to pay $2,500 of tuition expenses for retraining in any field related to psychology. The defendant's courses at Yale Divinity School in "Pastoral Counseling" (Defendant's Exhibit JJ, p. 94) which the plaintiff refused to pay for do not appear to the court to come within the intent of the provision.
The plaintiff's increased income is a substantial change in circumstances, giving this court the opportunity to review the needs of the dependent ex-spouse. The court has concluded that the defendant has become increasingly discontented with the original property division. Over the problem the court has no control. The court finds that the defendant has not been diligent in rehabilitating her economic circumstances. She has not managed her finances well. The plaintiff cites Cummock v. Cummock,188 Conn. 30 (1982) and Howat v. Howat, Conn. App. 400 (1984). These cases must be read in context with Borkowski v. Borkowski,228 Conn. 729 (1994).
This court is not convinced that the alimony award should be modified. As to the claim that it should be extended at this time, the court finds such claim to be premature. The defendant's motion for an increase in alimony is denied.
The issue of child support has also been raised by the defendant as needing modification. The child support order has increased to $750 per month as of September 1, 1996 pursuant to Article VI, Paragraph 6.2. However, Favrow v. Vargas,231 Conn. 1, (1994) mandated that every child support order analysis begin by determining what the child support guidelines provide. The combined net disposable weekly income of the parties exceed the maximum guidelines amount and, in the context of Sec. 46b-215b
and Sec. 46b-86a, the presumptive amount is then given as $327 as minimum weekly although the guidelines are not mandatory in the present case.
In fixing child support, the court considers the plaintiff's other obligations. He is obligated to support his present wife and their daughter, Sarah, Sec. 46b-215a-3 (b)(4)(B) and (C). The voluntary undertaking of the plaintiff to support his step daughter is not found to be another equitable factor. His college CT Page 3164 expense assumption for Michael is a pertinent factor, Sec.46b-215a-3 (b)(2)(A). The court does not find the division of assets and the original alimony order as particularly helpful, Sec.46b-215a-5 (A) and (B).
The court is satisfied that the child support order given in the agreement is inadequate. The defendant's motion is granted as to child support. The plaintiff is ordered to pay $400 weekly child support to the defendant for their daughter, Amy. No retroactivity is ordered as discussed supra. First payment of this order is April 4, 1997. A contingent wage withholding order is entered pursuant to statute for both periodic orders.
The defendant claims reimbursement for payment of Dr. Spotts' charges. The separation agreement in Article VII, Paragraph 7.3 clearly stated that the plaintiff would not be responsible for any charge "reasonably necessary but in no event beyond June 30, 1988" (emphasis added). The agreement is clear and was made part of the judgment. The defendant continued the treatment of their son at her expense.
As to Dr. Naso's bill and Dr. Turner's bill, the plaintiff was given no advance notice nor was his consent requested as required by Article VII, Paragraph 7.2. The plaintiff protested each bill (Plaintiff's Exhibits #12 and #13). The parties have exhibited an inability to communicate orally but only the plaintiff put his position in writing.
As to the billing from Diane Dillon of $1,500, the plaintiff participated thereby acknowledging de facto notice although it did not come directly from the defendant. The plaintiff is ordered to pay same within 30 days.
The defendant accumulated prescription bills but did not forward them to the plaintiff for either payment or submission to the insurance company. The defendant shall deliver the bills to the plaintiff for submission to the insurance carrier. Any rejected bills shall be paid by the plaintiff as he has offered to do as stated in his claims for relief.
The remaining bills for Louis Amato, Paul Gardner, Sue Quinlan and Anne Egbert all fall into the "no-notice" category and remain the defendant's responsibility.
The plaintiff's tender of a check conditional on his CT Page 3165 receiving a chair and crystal, with direction it not be used to pay summer camp unless his conditions were met was improper. The plaintiff is ordered to pay the $1,330 due for summer camp expenses for 1988 and 1992 with statutory interest from each due date.
The skating club charges the court finds unproven as well as de minimis. No order is made and any request for payment is denied.
The defendant requests an allowance to defend as well as to prosecute. The defendant has successfully defended the plaintiff's attempt to terminate alimony as well as obtaining a modified child support order. The court finds that she does not have the ample liquid funds needed to pay for her litigation expenses. To deny her request for an allowance would undermine the other periodic orders. Therefore, the defendant is awarded $20,000 as her allowance, $10,000 payable in 30 days and $10,000 payable in 90 days.
No contempt is found.
So ordered on the various motions.
HARRIGAN, J.