[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
ON DEFENDANT'S MOTION FOR MODIFICATION OF ALIMONY DATED JANUARY 31, 2000 (FILE #237)
A hearing was held on April 4, 2000 on the defendant's above motion in which he urges the court to terminate a $2000 per week periodic alimony order alleging that the plaintiff, his former wife, has been and is presently cohabitating with a Mr. Gregory Logan, an unrelated male. He is not claiming that this alimony order be terminated pursuant to § 46b-86 (b) of the Connecticut General Statutes. Under this. statute, the court has the discretion to modify a judgment by suspending, reducing, or terminating the payment of periodic alimony upon a finding that the party receiving the periodic alimony is living with another person and this living arrangements causes such a change in circumstances as to alter the financial needs of that party. Instead, the defendant seeks to terminate this periodic alimony order pursuant to the terms of the judgment entered on December 6, 1999, and claims that the judgment is self-executing and the court's explanation of cohabitation is clear and unambiguous. If he proves by a preponderance of the evidence that the plaintiff has been and is presently cohabiting with a Mr. Gregory Logan, the periodic alimony should automatically terminate, the same as if the plaintiff died or remarried. This motion to terminate alimony was dated January 31, 2000, and filed less than two months from the date judgment was entered. CT Page 5027
Because custody of the two minor children was being contested, this case was transferred from Danbury to the Family Trial Docket in Middletown for trial. After six days of trial in November, 1999, orders were set forth in a sixty-one page judgment rendered orally from the Bench on December 6, 1999 (Munro, J.).
In the judgment, the plaintiff was awarded $2000 per week in periodic alimony to terminate upon her death, remarriage or her cohabitation as explained more fully hereafter. The explanation of the order is set forth in pages 49 and 50 of the transcript as follows:
 The Court is aware of the case law regarding cohabitation. And the Court makes the following additional findings in regard to this alimony order. The Court finds, and has found, that it is not likely that Ms. Lakin can support herself in any significant way for the foreseeable future. And there is no evidence before the Court of sufficient rehabilitation on the horizon to be able to characterize this alimony as rehabilitative alimony and put a time limit on it. And therefore, the Court does not put a time limit on it. On the other hand, the Court is ascribing to Mr. Lakin this responsibility, so long as this responsibility has not been taken upon by someone else. For instance, if Ms. Lakin were to remarry, this alimony will terminate, her support will be the responsibility of not only herself but a subsequent spouse. The Court intends by cohabitation the same to apply to an individual living with Ms. Lakin as his place of abode. Now, the Court is aware that there is a further test that case law infers on a cohabitant. It is the intent of this Court to not have Mr. Lakin supporting a third party male individual cohabiting with Ms. Lakin, living with her as if she were married, without the benefit of the legal term of marriage. That is not an individual that Mr. Lakin has a duty to support. Instead, that is an individual who has a duty to contribute with Ms. Lakin to her support.
When this hearing commenced at 9:30 a.m. on April 4th, the plaintiff was not present. The attorney for the defendant and the attorney for the minor child both advised the court that she had failed or was late for numerous prior court hearings. The court then recessed to 10 a.m., but she had not arrived. The file indicates she has been represented by three different attorneys, and was represented by an attorney at the trial in Middletown. She presently is representing herself therefore, the clerk mailed the notice of CT Page 5028 this hearing to her on February 16, 2000. Furthermore, the defendant's attorney prepared a subpoena duces tecum for both the plaintiff and Mr. Gregory Logan which was served by a deputy sheriff in hand at the plaintiffs residence on March 24, 2000 to appear in court on April 4, 2000 at 9:30 a.m. Neither appeared, and the court began the hearing without them at 10 a.m.
The defendant was the only witness to testify at the hearing. He testified first meeting Mr. Gregory Logan at the former marital residence in Ridgefield in the Fall of 1997. From that time to the present time, he met and talked to him at her residence. He was there during the two and one-half years this action was pending when he went to pick up and drop off his minor children from this home. After the judgment was entered on December 6, he believes they were still living together. The telephone answering machine at her residence refers to them. They go on vacations together with the children. There is no doubt whatsoever in his mind that they have been cohabiting together from the date of the judgment to the present. On numerous occasions, the plaintiff has admitted cohabitating with him in court proceedings, in the Family Relations study, and in the psychological evaluation by Dr. Adamakos. The defendant's testimony was credible and probative, and the court finds the plaintiff has been living with Mr. Gregory Logan since the date of the judgment to the present time. There was no other evidence presented at this hearing.
At the time the alimony award was entered, the court was fully aware the plaintiff was living with Mr. Gregory Logan, an unrelated male, for the past two and one-half years. Having this knowledge, the court still awarded her periodic lifetime alimony of $2000 per week and explained what it meant by cohabitation in this order. The explanation begins with the statement, "The Court is aware of the case law regarding cohabitation." The judgment went on to state that "it was aware that there is a further test that case law infers on a cohabitant." However, the term cohabitation was not defined in this order, and the court finds the explanation to be ambiguous. What the court intended is not clear.
DeMaria v. DeMaria, 247 Conn. 715, 719-720 (1999), was decided almost ten months before this judgment was entered. In DeMaria, supra, the Supreme Court reversed the Appellate Court and upheld the trial court and confirmed the term cohabitation, which was not defined in the judgment, to require consideration of the financial impact on the recipient of the alimony. The court stated that the law requires the trial court to consider the financial impact on the cohabitating spouse: CT Page 5029
 Section 46b-86(b) does not use the word cohabitation. The legislature instead chose the broader language of `living with another person rather than cohabitation. . . . Kaplan v. Kaplan, 185 Conn. 42, 45, 440 A.2d 252 (1981), on appeal after remand, 186 Conn. 387, 441 A.2d 629 (1982). Because, however, living with another person without financial benefit did not establish sufficient reason to refashion an award of alimony under General Statutes § 46b-81, the legislature imposed the additional requirement that the party making alimony payments prove that the living arrangement has resulted in a change in circumstances that alters the financial needs of the alimony recipient. Therefore, this additional requirement, in effect, serves as a limitation. Pursuant to § 46b-86(b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony. [Internal quotation marks omitted.]
At the hearing on this motion, the defendant offered no evidence whatsoever that the plaintiffs financial needs have changed since the alimony order was entered to warrant termination of the alimony order. For all of the foregoing reasons, the defendant's motion is denied.
Romeo G. Petroni, Judge Trial Referee