[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Quinn Associates Inc. (hereinafter "Quinn") a foreign corporation not registered in the State of Connecticut as a foreign Corporation brings this four count Amended Complaint dated April 15, 1992 (Pleading #119) alleging in the First Count a breach of contract for nonpayment of four invoices totalling $8,103.47 which was paid by the Defendant FGA pursuant to an acceptance of an offer of judgment dated April 27, 1992 (See Pleading #120). Judgment in favor of Quinn was entered on the First Count June 8, 1992 (Gray, J.). The Second Count alleges a breach of contract with respect to the timely payment of the retention sums (10%) on each invoice as required by the contract (Exhibit A) totalling $21,568.87 for legal interest pursuant to Conn. Gen. Stat. § 37-3a. The Third Count claims interest under § 37-3a for failing to pay 55 invoices pursuant to the time requirements set forth in the written agreement (Exhibit A). The Fourth Count alleges that the defendant violated the Connecticut Unfair Trade Practices Act ("CUTPA") Conn. Gen. Stat. § 42-110 et seq. because the defendant FGA engaged in a deliberate and calculated scheme to withhold funds belonging to Quinn to reduce its borrowing or to avoid borrowing money to pay other obligations of FGA (Par. 11 of Amended Complaint). The plaintiff seeks money damages and punitive damage and attorney fees under CUTPA.
The defendant by way of Special Defense claims the benefit of C.G.S. § 33-412 (a) and that Quinn is barred from maintaining this action.
C.G.S. § 33-412 (a) provides in pertinent part
No foreign corporation transacting business in this state in CT Page 13381-A violation of section 33-396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority. Nor shall any action suit or proceeding be maintained in any court in this state by any successor or assignee of such corporation on any right, claim or demand, arising out of the transaction of business by such corporation in this state, until a certificate of authority has been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets.
Section 33-396 (a) provides in relevant part that "[n]o foreign corporation except an insurance or surety or indemnity company shall transact business in this state until it has procured a certificate of authority to do so from the secretary of the state." Where, as here, the issue is raised as a special defense, it must first be shown that the plaintiff was "transacting business" in this state. Springfield Plumbing Supply, Inc. v.Clinton Building Supply, Inc., Dk. No. CV 89-43066, (Conn. Super Ct. Dec. 16, 1991) reprinted at 7 CSCR 71, 72.
Relevant considerations used to determine whether a party has been transacting business in Connecticut include the situs of the contract, the presence of corporate employees or agents in Connecticut and the extent of such business activities here in Connecticut. Kraft Foodservice, Inc. v. Fine Host Corp., Dk. No. CV94013717S (Conn.Super.Ct. Apr. 18, 1995) reprinted at14 Conn. L. Rptr. 44, 46.
Quinn entered into an "On Call Services Contract in 1985 (Exhibit A) to the extent of $45,000. The scope of services was not fixed. The services were provided on an hourly basis at an agreed rate plus profit. Quinn had to submit time cards and the work was delivered to FGA who then presented it for payment by the Connecticut Department of Transportation (hereinafter DOT). Quinn would provide photogrammetric surveys to FGA on an as needed basis. FGA in turn would turn over all plans, computations specifications or other materials to DOT. The contract Exhibit A through Exhibit F increased the contract price up to its final limit of $1,105 million dollars.
The contracts were upgraded as to amounts approved by DOT. All contracts were based on time and materials. The invoices (Exhibit G) would be presented monthly to FGA. FGA would then present them for payment to DOT after approval by DOT payment CT Page 13381-B would be processed to another department of DOT for payment. Payment would be made to FGA less 10% retainage on each invoice. FGA was required to pay Quinn in accordance with the written contract (Exhibit A) at page 2, as follows:
 "Upon receipt of invoices requesting partial payment under this Agreement, FGA shall, upon ascertaining that the costs are true and just, submit the claim to the Connecticut Department of Transportation, FGA will pay the sub-consultant the total amount due within ten days." (Emphasis added).
The foregoing provision was incorporated in all written supplemental agreements.
The above contracts were a new concept for DOT, FGA and Quinn. The value of the contracts increased after realizing the benefits of using photogrammetric surveys. The surveys were made with the use of aerial photography. The surveys would show the areas elevations and locations of other appurtenances to the highways. There was no provisions in the agreements for late charges or costs of collection. Failure to so provide regarding late payment is not a waiver to claim interest for late payments. Delehanty, President of Quinn never had any discussions about extending the 10 day period for payment after receipt of payment by DOT.
All work on surveys was done in Pennsylvania, the place of incorporation of Quinn. In the summary of Arguments by Defendant, FGA (p. 2 Defendant's Post Trial Brief) and contained in its Special Defense FGA argues that the evidence shows Quinn was transacting business in Connecticut. Quinn argues that the § 33-397 (b)(8) exempts the plaintiff because it was transacting business in interstate commerce. What constitutes transacting business in this state was discussed in Country ClubSoda Co., Inc. v. Weinberg, 3 CS 237. In Weinberg the court found that the defendant did not have an office in this state and salesmen were only engaged in getting orders shipped to the home office. In this case in point FGA argues that because meetings were held in Connecticut attended by Quinn that such activity constituted transacting business in this state. This court disagrees. All the work was done in Pennsylvania, the location of the business of Quinn. The court finds that the defendant FGA has not met its burden of proof to have the benefit of the bar provided under § 33-412. CT Page 13381-C
Another special defense asserted at the start of trial; C.G.S. § 52-576 the statute of limitations is also not available to the defendant since this action was commenced within six (6) years of the date of the invoices under the terms of the contracts. Further FGA has failed to brief said defense therefore the court deems it abandoned.
The Second Count
This count seeks payment of the balance of the retainages on each invoice. Carol Merryweather (hereinafter Merryweather) the Billing Supervisor at Kimball the parent company of Quinn prepared an excellent history of the charges and payments under the contracts (Exhibits A-F). Merryweather testified from an exhibit prepared by her (Exhibit K) concerning each invoice. In accordance with Exhibit K the total retentions of all invoices was $79,240.48 of which $57,671.61 was paid by FGA to Quinn. Retention payments were made after DOT paid them. Quinn now seeks $21,568.87. Notwithstanding Quinn's objection to testimony concerning the outstanding balance by DOT and FGA this court did not interpret the claim of Quinn that the sum was due at this time since Wallace Lugli of DOT testified that DOT had not signed off as to $11,602.00 which is still being held. Lugli testified that the final retainage has not been paid to FGA until the final audit. FGA asserts that the $11,608.00 is not due until the final audit. (See page 3 of Exhibit A. The testimony disclosed that a $10,000 payment was made to FGA on the retainage on July 18, 1990 which has not been paid. The defendant FGA asserts that the $10,000 was considered by them as the final payment and that in accordance with the contract is not due until the final audit. No such explanation was given to Quinn prior to its discovery. From all evidence adduced at trial the final payment is the $11,602 which is presently being held by DOT. Quinn has provided its final audit to DOT and FGA. FGA has wrongfully kept the retainage of $10,000 paid to it by DOT. Accordingly judgment may enter in favor of Quinn for $15,377.78 which includes interest pursuant to C.G.S. § 37-3a (See Exhibit L).
Third Count
Quinn seeks payment of legal interest for late payment of invoices (Exhibit G) pursuant to C.G.S. § 37-3a that were not paid in accordance with the contracts. Merryweather reconstructed the date of payments on all invoices from the start of the CT Page 13381-D contract. Quinn asserts that FGA failed to comply with the requirement set forth in the contract and that payment to Quinn within 10 days from the date FGA was paid by DOT was not made. Merryweather constructed a chart (Exhibit K) showing the amounts of each invoice; the check dates as shown in (Exhibit J) of payment by DOT of the invoice, the date FGA paid Quinn on that invoice, the days that payment was delayed and the claimed interest (10%) for the time delayed. The time delayed was measured by allowing 5 days for mailing plus 10 days subtracted from the date of the check and date FGA made payment to Quinn. The entire claim for late payments is computed on Exhibit K $23,544.56 less $1,202.85 the amount included in the payment of the last four invoices satisfied in the First Count. FGA during trial prepared a similar chart (Exhibit 7) showing only the sum of $2,071.96 as interest due for the late payments. The chart of Quinn is more credible than that of FGA and accordingly the court rejects FGA's chart. Raymond Macaluso (hereinafter "Macaluso") Vice President of FGA testified that all accounting came under his supervision. Macaluso testified the checks received from DOT were global (more than one subcontractor's charges) and deposited the next day. Macaluso testified that the Bank with which they did business controlled the disbursement of funds for this job and that FGA's "hands were tied." Other than the testimony of Macaluso no Bank official appeared at trial to support this claim nor was Quinn involved in any such arrangements. Not until the present action was instituted was such a defense raised. Delehanty, President of Quinn, did not raise the issue of interest but kept requesting that FGA expedite their payments of money due. In July 1989 a schedule for payment of the sums past due was advanced by FGA but nothing contained in that understanding supports FGA's claim that the 10 day period for payment of invoices upon; receipt of DOT payment was modified. Quinn from all the evidence adduced at trial never waived a claim for interest or is Quinn estopped from seeking interest for late payments. It is naive to suggest as Macaluso testified that be believed that there would not be interest charges for late payments. FGA argues that Delehanty or Quinn and Macaluso had an amicable business relationship throughout the contract period. Macaluso points to Defendant's Exhibit 4 to demonstrate that the 10 day period had been relaxed and modified. In this case getting paid for past due accounts does not mean that interest for late payments was excused or waived. Estoppel has not been pled so this court does not address that principal.
The allowance of interest, pursuant to C.G.S. § 37-3a, is CT Page 13381-E a matter within the discretion for the trial court. Metcalfe v.Talarski, 213 Conn. 145, 160, 567 A.2d 1148; Solomon v.Hall-Brooke Foundation, Inc., 35 Conn. App. 504, 517, 646 A.2d 901
(1994); Alderman v. RPM of New Haven, Inc., 20 Conn. App. 566,569-70, 568 A.2d 1068 (1990). The allowance turns on whether the detention of the money is or is not "wrongful" under the circumstances. Newington v. General Sanitation Service Co.,196 Conn. 81, 90, 491 A.2d 363 (1985). (See Defendant's Post Trial Brief). This court finds that the failure to make payments in accordance with the time requirements of the contracts in this case is a wrongful detention of monies due to the plaintiff. The conduct of Quinn did not modify the 10 day period. Accordingly, judgment is entered in favor of the plaintiff in the amount of $22,341.71.
Fourth Count
Quinn argues that FGA by delaying payments to Quinn that it was in effect the "unwilling banker" for FGA. Quinn argues that FGA used all the funds not paid on time and the retainage (See Second Count) to either reduce its borrowing levels or to avoid borrowing money.
Quinn's CUTPA claim is premised upon nothing more than, at most, a breach of contract. At trial, Quinn did nothing more than to show that FGA failed to pay monies on time for which this court has already awarded interest in the Third Count. This court has already ruled in Emlee Equipment Leasing v. WaterburyTransmission, 595 A.2d 951 (Conn. Superior Court 1991). "A simple breach of contract even if intentional does not amount to a violation of the act, a (claimant) must show substantial aggravating circumstances. With respect to the Second Count for wrongful detention of the retainage the court has made a favorable finding for the plaintiff and attached interest. The defendant asserts that the payment now is still in dispute because a final audit has not been made.
The defendant FGA argues "Even in the light most favorable to the plaintiff, the court held that such events constitute no more than a claim of intentional breach of contract, which also does not fall within CUTPA." (citations omitted).
The court finds that the plaintiff has failed to prove by a fair preponderance of the evidence that FGA had a general business practice of unfair immoral or unethical conduct; rather CT Page 13381-F that the only evidence is of FGA's dealings with one party, Quinn. The court rejects the argument of the plaintiff that the defendant had a scheme that was unethical, immoral or illegal. Accordingly judgment may enter in favor of the defendant as to the Fourth Count.
Frank S. Meadow State Trial Referee