## JOSEPH D'ASCANIO *v.* MARY LOUISE D'ASCANIO (15273)

Callahan, Borden, Berdon, Norcott and Palmer, Js.

---

Argued March 26—officially released June 25, 1996

*Robert M. Casale,* for the appellant-appellee (plaintiff).

*Gary I. Cohen,* with whom was *Lee Marlow,* for the appellee-appellant (defendant).

BERDON, J. In this appeal, the plaintiff seeks to reverse the judgment of the trial court for failing to modify an alimony award in accordance with the terms of a settlement agreement entered into between the parties that was incorporated by reference into the original decree dissolving their marriage. The defendant cross appeals, claiming that there was insufficient evidence to support the trial court's modification of the alimony award. The parties appealed to the Appellate Court, and we transferred both appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The marriage between the plaintiff, Joseph D'Ascanio, and the defendant, Mary Louise D'Ascanio, was dissolved on January 9, 1986. Pursuant to the decree of dissolution, the plaintiff, inter alia, was ordered "to pay the defendant as alimony the sum of $900 per week

for so long as she lives and remains unmarried." Subsequently, the parties returned to court on numerous occasions regarding various issues pertaining to the dissolution of their marriage, including several motions to modify the alimony award. Ultimately, on August 21, 1990, the parties entered into a written settlement agreement that modified a number of the terms of the dissolution judgment (modification agreement).[1] Following a hearing at which the parties acknowledged their understanding of the modification agreement's terms and consequences, the trial court, *Mihalakos, J.*, approved the agreement, finding that it was fair and equitable. See *Hayes* v. *Beresford*, 184 Conn. 558, 567–68, 440 A.2d 224 (1981) ("Under our statutes, a court has an affirmative obligation, in [dissolution] proceedings, to determine whether a settlement agreement is 'fair and equitable under all the circumstances.' General Statutes § 46b-66. The presiding judge has the obligation to conduct a searching inquiry to make sure that the

---

[1] The modification agreement provides: "The parties in the above matter agree as follows:

"1. That effective on [August] 25, 1990, the plaintiff shall pay alimony to the defendant of $700 per week; said alimony shall be paid for nine years and four months (507 weeks). Said alimony shall terminate upon the expiration of nine years and four months (507 weeks) and shall not be modifiable by either party in terms of duration or amount except that in the event that the defendant remarries or cohabitates, as defined by statute, the alimony shall be reduced by one half ($350). Further, it is understood that if and when the defendant obtains gainful employment, regardless of the amount she earns, that such income shall not be a basis for a reduction in child support by the plaintiff which shall otherwise not be subject to any restriction as to modifiability other than usual statutory and common law criteria.

"2. That all payments made by the plaintiff shall be deemed paid on time if such is mailed postage prepaid on the Wednesday prior to the Friday when due. Time shall be of the essence. Any payment not postmarked as above noted shall cause the plaintiff to be taxed a $100 (per event) assessment.

"3. That the judgment of the court shall otherwise remain in full force and effect.

"4. [The p]laintiff agrees to pay child support after the [eighteenth] birthday of [any] child so long as he/she remains a full-time high school student."

settlement agreement is substantively fair and has been knowingly negotiated. . . . With such judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine." [Citation omitted.]). Pursuant to § 46b-66,[2] the court ordered that the modification agreement be incorporated in the original dissolution decree.

The pertinent paragraph of the modification agreement provides: "That effective on [August] 25, 1990, the plaintiff shall pay alimony to the defendant of $700 per week; said alimony shall be paid for nine years and four months (507 weeks). Said alimony shall terminate upon the expiration of nine years and four months (507 weeks) and shall not be modifiable by either party in terms of duration or amount *except that in the event that the defendant remarries or cohabitates, as defined by statute, the alimony shall be reduced by one half ($350).* Further it is understood that if and when the defendant obtains gainful employment, regardless of the amount she earns, that such income shall not be a basis for a reduction in child support by the plaintiff which shall otherwise not be

---

[2] General Statutes § 46b-66 provides: "In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. If the court finds the agreement is not fair and equitable, it shall make such orders as to finances and custody as the circumstances require. If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d."

subject to any restriction as to modifiability other than usual statutory and common law criteria." (Emphasis added.)

On May 23, 1994, alleging that the defendant was cohabiting with Dean Griffin, the plaintiff moved, pursuant to the terms of the modification agreement, to have his weekly alimony payment reduced by $350.[3] The trial court, after a hearing on the motion, found that the defendant was in fact cohabiting with Griffin. Notwithstanding its finding, however, the trial court refused to apply the terms of the modification agreement that would have reduced the plaintiff's alimony payment by $350. Instead, the court reduced the alimony award by only $100 per week, thereby obligating the plaintiff to pay $600 per week.

The parties do not contest the fact that the modification agreement defines "cohabitation" by reference to General Statutes § 46b-86 (b).[4] Section 46b-86 (b), known as the "cohabitation statute," provides in pertinent part that a court may "modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification . . . of alimony because the living arrangements cause such a change of circumstances as

[3] See footnote 7.

[4] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

to alter the financial needs of that party." Therefore, in order to find that the defendant was cohabiting with Griffin, as defined by statute, the plaintiff had to prove that (1) the defendant was living with Griffin, and (2) the living arrangement with Griffin caused a change of circumstances so as to alter the financial needs of the defendant. *Kaplan* v. *Kaplan*, 186 Conn. 387, 389, 441 A.2d 629 (1982).

"[T]he General Assembly chose the broader language of 'living with another person' rather than 'cohabitation.'" *Kaplan* v. *Kaplan*, 185 Conn. 42, 45, 440 A.2d 252 (1981), on appeal after remand, 186 Conn. 387, 441 A.2d 629 (1982). Whether an individual is "living with another person" is a fact specific determination. See *Lupien* v. *Lupien*, 192 Conn. 443, 472 A.2d 18 (1984); *Kaplan* v. *Kaplan*, supra, 186 Conn. 387; *Duhl* v. *Duhl*, 7 Conn. App. 92, 507 A.2d 523 (1986). In this case, the trial court found that, because Griffin slept at the defendant's house seven nights a week, was identified by the defendant's children as their stepfather, and traveled with the defendant and her children, the defendant and Griffin were "living together." The defendant does not challenge that finding.

On her cross appeal, however, the defendant asserts that no evidence was presented to support the trial court's finding that her living arrangement with Griffin caused such a change of circumstances as to alter her financial needs. We disagree. Section 46b-86 (b) "requires only a 'change' of circumstances, not a 'substantial change' as required by § 46b-86 (a)."[5] *Kaplan* v. *Kaplan*, supra, 185 Conn. 45–46.

With respect to the factual predicates for modification of an alimony award pursuant to § 46b-86 (b), our

[5] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony . . . may at any time thereafter

standard of review is clear: "This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken. . . . This court, of course, may not retry a case. . . . The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Citations omitted; internal quotation marks omitted.) *Lupien* v. *Lupien*, supra, 192 Conn. 445.

The trial court, in concluding that the defendant's financial needs had been altered because of her living arrangement with Griffin, found that "Griffin's corporation provided the defendant with health insurance benefits and hosted the defendant and her children at various Caribbean locales. . . . Griffin contributed a computer, piano and tools to the defendant's residence [and] occasionally contribut[ed] food items . . . . Griffin also performed lawn mowing, snow removal and handy-man services at [the] defendant's home." Indeed, in response to a motion for articulation filed by the defendant, the trial court "found that the defendant's cohabitation with [Griffin] resulted in a contribution to the defendant, above and beyond [Griffin's] expenses, in the amount of one hundred dollars a week." The trial court's factual finding is not clearly erroneous and, therefore, we reject the defendant's claim on her cross appeal.[6]

be . . . modified by . . . a showing of a substantial change in the circumstances of either party . . . ."

[6] The defendant claimed that the financial benefits she received from Griffin and his corporation were compensation for her employment. The

Having found that the defendant was cohabiting with Griffin, as defined in § 46b-86 (b), the trial court held that to enforce the terms of the modification agreement and reduce the plaintiff's weekly alimony payment by $350, when the defendant's financial needs were altered by only $100 per week due to her living arrangement with Griffin, would be inequitable and would amount to a penalty. Consequently, the trial court refused to apply the terms of the modification agreement and, sua sponte, reduced the defendant's weekly alimony by $100 retroactive to October 1, 1993.[7]

This deviation from the terms of the modification agreement by the trial court was improper. The only issue raised before the court was whether the defendant was cohabiting with Griffin within the meaning of § 46b-86 (b). Both the parties and the trial court agreed that, according to the modification agreement, once a finding of cohabitation was made, the alimony award would be reduced by one half.[8] At the commencement of the

---

trial court, however, was not required to credit her testimony. *Fleming* v. *Garnett*, 231 Conn. 77, 84, 86, 646 A.2d 1308 (1994).

[7] On June 9, 1994, the plaintiff amended his motion for modification of alimony seeking to have the modification effective the date that the defendant commenced living with Griffin. See *Milhalyak* v. *Milhalyak*, 30 Conn. App. 516, 522, 620 A.2d 1327 (1993) (under language of judgment, "alimony ceased when the plaintiff's cohabitation began . . . . The alimony termination provision was automatic and self-executing *upon cohabitation*, just as it would have been upon her remarriage or the death of either party." [Emphasis in original.]). The trial court in this case ordered that the alimony be reduced as of October 1, 1993. Neither party challenges this date as the effective date for the order of modification.

[8] The defendant argues that the trial court "is not bound by a stipulation or agreement entered into by the parties which refers to alimony or division of estate." She relies solely on *Sands* v. *Sands*, 188 Conn. 98, 448 A.2d 822, cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983), for that proposition. *Sands*, however, is inapposite to the issue before us today. Unlike the modification agreement in the present case, which had been found to be fair and equitable, the settlement agreement at issue in *Sands* had never been approved by the trial court. Id., 103. Rather, the agreement in *Sands* was presented to the court for the first time for its approval: "If the court finds the agreement is not fair and equitable, it shall make such

hearing on the plaintiff's motion for modification, the issues before the court were delineated as evidenced by the following colloquy between the court and counsel:

"The Court: Let me just use a few minutes here to talk a little bit about the case here. Do you understand the agreement to have the effect of limiting the court's statutory discretion in the sense that if I find that there is cohabitation under the statute . . . it would be an automatic reduction by one half; is that your understanding of the agreement?

"[Michael Beebe, trial counsel for the plaintiff]: Yes, I do, Your Honor, and there is a case that supports [that result], *Milhalyak* v. *Milhalyak*, 30 Conn. App. 516, 620 A.2d 1327 (1993).[9]

"The Court: All right. Attorney Murrett, is that your thought on—

"[Kathleen Murrett, trial counsel for the defendant]: I don't know that I agree with Mr. Beebe's interpretation of that case, but yes, I would agree with that.

"The Court: Under the facts of this case . . . I'm being asked to find whether under the statute I find cohabitation, and . . . you have an agreement which removes . . . the court's discretion [as to the] type of modification that would be appropriate. Here you've agreed that in the event of cohabitation [alimony] . . . would be reduced by one half . . . . So I just wanted to see if you shared my thought on that."

We agree that the sole issue to be resolved by the trial court, as framed by the parties, was whether there was cohabitation between the defendant and Griffin. Once that question had been answered in the affirmative the court should have enforced the terms of the modifi-

orders as to finances . . . as the circumstances require." (Internal quotation marks omitted.) Id., 102–103.

[9] See footnote 7.

cation agreement entered into by the parties and approved by the court.

The judgment is reversed and the case is remanded with direction to render judgment reducing the plaintiff's weekly alimony payment, in accordance with the terms of the modification agreement, from $700 to $350, retroactive to October 1, 1993.

In this opinion the other justices concurred.