[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO MODIFY, DATED MAY 28, 1997
This proceeding first came to this Court pursuant to a summons and complaint dated February 27, 1989 and returnable March 21, 1989 seeking a dissolution of marriage and other relief.
On August 22, 1991 after hearing had the Court, Freedman, J., issued a 12-page detailed memorandum of decision dissolving the marriage and entering certain orders. The decision was modified as to the issue of support for minor children by Hurley, J., on March 20, 1992 and by Booth, J., on August 30, 1993.
A motion to reargue and set aside the judgment dated September 9, 1991 was denied.
In its March 20, 1992 memorandum of decision, the Court, Hurley, J., declined to modify alimony.
A request to modify the judgment, dated June 3, 1993, as to alimony, was also denied by the Court, Booth, J.
From the August 22, 1991 memorandum of decision, the Court notes the following salient portions insofar as the current request to modify is concerned pertaining to alimony.
The Court valued the Joshua Town Road, Lyme property at $440,000.00 and assigned the same to the Plaintiff, subject only to a modest first mortgage of $52,000.00. The small second mortgage was to be paid by the Defendant $44,000.00.
The Court awarded the Plaintiff a 1/2 interest in 20.41 acres of land in Lyme, valued at $215,000.00 at the time of the dissolution, which is free and clear.
The Court's award as to alimony was as follows.
Item 4, page 8 of the memorandum:
"The Defendant husband shall pay to the Plaintiff wife the sum of $300.00 per week as periodic alimony until the death of the Defendant husband, the death or remarriage of the Plaintiff CT Page 4590 wife or September 1, 1997, whichever event shall first occur."
In addition, the Plaintiff was determined to be the sole survivor of Plan A and Plan B of the Defendant's retirement through TWA and on his death to receive monthly annuities equal to 50% of the husbands monthly pension payments.
In addition, the Plaintiff received a Mercedes motor vehicle and with few exceptions the contents and furnishings of the Joshua Town Road property.
In addition, the Defendant paid approximately $23,000.00 to the wife's counsel and the attorney for the then minor children.
In her motion to modify of May 28, 1997, the Plaintiff claims that there has been a substantial change in circumstances that would require a modification and extension of alimony orders, more particularly that the Plaintiff has suffered certain health setbacks that would decrease her ability to earn and the number of her productive years of work.
In addition, the Plaintiff claims that the Defendant's financial circumstances have improved substantially.
On this motion the Court, Solomon, J., directed that any modification be retroactive to June 30, 1997.
The parties, with their respective counsel, appeared before the Court on February 9, 1999 and March 10, 1999 and were heard.
The Court makes the following findings of fact.
Frank W. Maletz is a medical doctor and a member of Thames River Orthopedic Group, LLC.
For his curriculum vitae, see Plaintiff's Exhibit 1.
For a more detailed medical statement, see Plaintiff's Exhibit 7 as concerns his treatment or findings as to the Plaintiff.
From the report of Dr. Maletz, dated November 2, 1998, Plaintiff's Exhibit 7, the Court notes:
"The patient carries a diagnosis of Hashimoto's disease and CT Page 4591 hypothyroidism. As long as her estrogen and thyroid metabolism remain satisfactorily controlled, she is maintaining her bone densities satisfactorily. She is now 55 years of age and post menopausal." The report indicates that the Plaintiff sustained a fall in April 1998 resulting in fractured ribs but does not address the cause of the fall.
Dr. Maletz indicates that the Plaintiff's bone density problem will worsen with age and because of the nature of her employment that she is at greater risk for incurring fractures should she fall.
In his testimony on February 9, 1999, Dr. Maletz in response to a question put to him by counsel for the Defendant stated, "I believe she will continue to work and I believe there is a fine balance relative to the risk in that working. I am hopeful and even prayerful that no future injuries will occur. If we could surmise that she remains healthy, active, all metabolic controls are there, I would anticipate she will complete her working life."
Dr. Maletz first treated the Plaintiff in February 1994 for a fracture of the right ankle. Subsequently, Plaintiff was diagnosed as having an overactive thyroid condition and osteoporosis.
Plaintiff was also diagnosed as having carpal tunnel syndrome and bursitis.
The Plaintiff has been treated or monitored since 1994 regarding bone density concerns. Dr. Maletz testified that the Plaintiff has a further 20% range to go before she has a serious bone density problem.
The standard for bone density loss is a 26 year old white female.
According to the testimony of Dr. Maletz, the Plaintiff is experiencing bone marrow loss at the rate of 2% a year.
The Plaintiff is now, and has been for many years, an airline stewardess.
Plaintiff is on an anti-inflammatory medication, synthroid for bursitis. CT Page 4592
Plaintiff's loss of bone density is due to a thyroid condition and osteoporosis.
The Plaintiff is age 54 and experienced a 15 to 20% bone density loss by the time of menopause onset.
Plaintiff's bone density in her hips is 75%, in her other joints 75 to 80%.
Plaintiff's hypothyroid condition is now stable.
The Plaintiff, according to Dr. Maletz, can continue in her present work and employment and is expected to complete her working life.
Plaintiff went through menopause at age 51.
Plaintiff has been a flight attendant for United Airlines for the last four years, she flies 85 hours a month or 38 hours a week, depending on her schedule.
Plaintiff transferred from TWA to United for reasons of job security.
Plaintiff acknowledged that she is able to perform her duties.
Synthroid is a hormone replacement.
At the time of the dissolution, the two children issue of the marriage were ages, 14 and 16, they are now ages 22 and 24.
One child is still in college in Colorado, the other child attended and graduated from the Rhode Island School of Design.
Since the time of the divorce, the Defendant has expended the following sums in furtherance of the education of the children of the parties, $159,000.00 in periodic payments to educational institutions, plus the further sum of $38,000.00 in tuition payments, plus $11,000.00 in 1996 for a total of $208,000.00. The Defendant, under the terms of the judgment, was not obligated to make these payments but presumably made them out of love and affection for the children. CT Page 4593
The Plaintiff passed her medical examination when she transferred from TWA to United and has not lost any time from work since her broken rib accident.
In 1996-97, Plaintiff skied with her son in Colorado.
Plaintiff's thyroid condition has not resulted in any lost time at work.
In 1996 the Plaintiff listed for sale the Joshua Town Road property for $600,000.00.
Prior to being a stewardess, the Plaintiff attended secretarial school in 1961-62.
The Defendant has been retired for ten years, he is now age 70, he was retired when the divorce was granted in 1991.
The Plaintiff never contributed to the educational costs of the children, Kersten and Kyle.
The marriage was the second for the Plaintiff and the first for the Defendant.
The Defendant's present state of health is good.
From the exhibits, the Court makes the following findings.
In 1990, a year prior to the dissolution, the Defendant's income annually was $133,957.00. The major portion being from TWA and the Navy. See Defendant's Exhibit H, tax return.
In 1997, Defendant's tax return reflects gross income at $66,832.00, mostly from pensions.
In 1996 Defendant's tax return reflects gross income at $111,089.00. See Plaintiff's Exhibit B.
In 1994 Defendant's tax return reflects gross income of $61,316.00.
In 1993 Defendant's tax return reflects gross income of $59,051.00. See Plaintiff's Exhibit E.
In 1992 Defendant's tax return reflects gross income CT Page 4594 of $116,455.00, form 2119 accompanying this return reflected the sale of Defendant's residence. See Plaintiff's Exhibit F.
In 1991 Defendant's tax return reflects gross income of $74,320.00. See Plaintiff's Exhibit G.
From the financial affidavits of the parties, the Courtfinds.
The Defendant's net weekly income is $1,162.23.
Defendant's weekly expenses are $2,044.84. Defendant's total assets amount of $1,508,584.00.
The Plaintiff's gross weekly income is $471.00, deductions of $194.00, which includes $60.00 weekly into her 401K, net $277.00.
Expenses as shown on her affidavit of $711.70 weekly, including deductions for vacations, travel and gifts.
Plaintiff's total assets amount to $611,475.00 wherein Plaintiff values the Joshua Town Road property at $422,000.00, which she listed for sale at $600,000.00 some time ago.
Plaintiff's exhibit 4 reflects the following as concerns Plaintiff's income with TWA and United Air Lines.
1992 TWA $21,160.74
1993 TWA $22,094.20
1994 TWA $20,256.17
1995 TWA $9,489.03
1995 United $10,476.25
1996 United $20,078.84
1997 United $20,323.56
 The Law
General Statutes § 46b-86 provides in relevant part:
CT Page 4595 "Modification of alimony or support orders and judgments. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . . No order for periodic payment of permanent alimony or support may be subject to retroactive modification except that the court may order modification with respect to any period during which there is a pending motion for modification of any alimony or support order from the date of service of notice of such pending motion upon the opposing order. . . ."
From Crowley v. Crowley, 46 Conn. App. 87 (1997), the court notes:
 "In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. . . . More specifically, these criteria, outlined in General Statutes § 46b-86, require the court to consider the needs and financial resources of each of the parties. . . as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties.
 When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the § 46b-82 criteria, make an order for modification. Id. The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. The inquiry, then, is limited `to a comparison between the current conditions and the last court order.'"
See also, Shearn v. Shearn, 50 Conn. App. 225 (1998); and fromDenley v. Denley, 38 Conn. App. 349 (1995).
"Section 46b-86 reflects the legislative judgment that CT Page 4596 continuing. . . payments should be based on current conditions. . . . Thus, [t]o avoid re-litigation of matters already settled, courts in modification proceedings allow the parties only to present evidence going back to the latest petition for modification. . . . [D]ecrees may only be modified upon proof that relevant circumstances have changed since the original decree was granted." (Citations omitted; internal quotation marks omitted.)
 This limitation, however, does not prevent a trial court from considering relevant evidence of a party's circumstances prior to and subsequent to the last applicable court order if needed for purposes of a reasonable comparison.
See also, D'Ascanio v. D'Ascanio, 237 Conn. 481 (1996).
 Discussion
The Plaintiff's position, as best the Court can perceive it, is to the effect that due to the problems attendant to aging, gradual loss of bone density and problems incident to a hypothyroid condition that the state of her health has deteriorated to a point where the Court should extend the alimony payments beyond that provided for in the opinion of Freedman, J.
Admittedly, the Plaintiff sustained a broken ankle which apparently did not heal properly, but her leg was in a cast in 1991 when Freedman, J., decided the matter. It may also be true that mindful of the broken ribs accident that her calling as a stewardess is potentially fraught with more risks than a more sedentary calling, but Freedman, J. was also aware of her avocation at the time of the decree.
The memorandum of decision of August 22, 1991 reflected that at the time of the decree that Plaintiff was age 47 and in good health except for a broken leg incident to an ice skating accident.
It also reflected that the Defendant, a retired airline pilot, had a broken arm at the time of the decree resulting from a fall from a ladder.
The Defendant had retired from Trans World Airlines after 25 years of service in 1988. CT Page 4597
The Court, Freedman, J., in his decision noted that the Court had substantial evidence before it in arriving at values of the parties' assets.
The problems of bone density loss is a problem attendant to all if they survive into their fifties and beyond.
Plaintiff's witness Dr. Maletz indicated that she is not disabled insofar as her position of a stewardess is concerned and may be expected to complete her working life.
A review of the exhibits presented, the file, the affidavits filed in 1991 do not reflect any such substantial enhancement of the Defendant's financial condition that would justify modifying the judgment.
The testimony and evidence also reflect and support a finding that the Plaintiff's bone density loss and thyroid condition are merely due to the aging process which affects us all.
Extensive detailed financial disclosure by the Defendant at the time of the dissolution was available to Freedman, J. when he issued his memorandum of decision.
The motion to modify is denied.
Austin, JTR