[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT (MOTION 109)
Pursuant to Connecticut Practice Book section 25-27,[1] this court heard evidence concerning the plaintiff wife's motion for contempt. The issue before the court is the plaintiffs allegation that the defendant has failed to make any alimony payments since July 1990. The plaintiff claims an arrearage of nearly $93,000. She further alleges that the defendant failed to pay his appropriate share of their child's medical expenses. The defendant's response is that in accordance with the 1996 separation agreement, his loss of income mandated a reduction in alimony and child support.
Examination of the court file reveals the following. On November 12, 1986 a trial court, Harrigan J., entered an order dissolving this marriage.[2] Separate counsel represented each party. That judgment incorporated a written separation agreement that contained the following provisions:
 5.1 . . . [T]he Husband shall pay to the Wife, during his lifetime, until her death, remarriage, or cohabitation, or until January 1, 1997, whichever occurs first, the sum of EIGHT HUNDRED FIFTEEN AND 00/000 (815.00) DOLLARS, as alimony, every other week, and shall pay to the Wife forty (40%) percent of his annual bonus. . . . Furthermore, the Husband shall pay to the Wife the sum of THREE HUNDRED TWENTY-FIVE AND 00/000 ($325.00) DOLLARS, as child support, for the minor children, every other week.
 5.2 Upon the minor child STEPHEN KEYL BEHRNS reaching the age of eighteen, the amount of child support, shall be reduced to ONE HUNDRED SEVENTY-FIVE ($175.00) DOLLARS, every other week. Upon the minor child DANIEL RAY BEHRNS reaching the age of eighteen, all payments shall cease.
5.3 All the payments, pursuant to this Article V, shall increase or CT Page 12959 decrease, by an amount equal to the cost of living as measured by the Consumer Price Index, or the percentage yearly increase or decrease in the Husband's salary and wages, whichever is less, provided; however, that the Husband grant authorization to the Wife to verify the increase or decrease in salary or wages with the Husband's employer or accountant, as the case may be.
5.5 In the event of the remarriage or cohabitation of the Wife prior to the children attaining age eighteen, the Husband shall from and after that date of said remarriage or cohabitation, pay to the Wife for each child's support the sum of TWO HUNDRED FIFTY AND 00/000 ($250.00) DOLLARS, every other week until the children each attain age eighteen.
5.7 Upon the wife earning in excess of THIRTY THOUSAND AND 00/000 ($30,000) . . . the monthly payment stipulated in Article 5.1 shall be reduced until the monthly payment shall be reduced to zero. The Wife shall give authorization and provide verification of her salary and income, from any source whatsoever, to the Husband, on a yearly basis.
 6.1 The Husband shall provide medical and hospitalization insurance . . . The Husband and Wife shall share equally for all included and unreimbursed medical and dental expenses of the children
At the time of the dissolution the defendant worked in Indiana for the GTE Corporation. Four years later, as a result of a company re-organization, the defendant lost his position. Despite an extensive search, he could not find employment in a similar field. Consequently, the defendant moved to Vermont. There he began a new enterprise, the Dunham Hill Bakery.
The Dunham Hill Bakery was not successful. Although he worked long hours, the defendant never received financial compensation. Tax returns from 1990 forward indicate that the defendant and his company were insolvent. The defendant first filed for bankruptcy in 1992.
Since July of 1990, the defendant made few of the alimony or child support payments. When these payments stopped, the plaintiff questioned the defendant's actions.[3] The defendant indicated he would do what he could to provide support. However, since 1990 the defendant has had no net income. Furthermore, he filed for bankruptcy on several occasions since that date.
Although the defendant never tendered authorization from his employer CT Page 12960 or accountant to verify this loss of income, the plaintiff never asked for the same. Similarly, she never asked for tax returns; she never asked for an accountant's name and address. Finally, there is no evidence that the plaintiff forwarded the authorization for the defendant to verify her annual income.
The plaintiff had moved to Illinois some time after the marriage dissolution. There she remarried in 1993. From that year forward, the defendant's sole obligation was child support. In 1994 the plaintiff unsuccessfully attempted to collect an alleged child support arrearage through the State of Illinois. There is no indication of the status of that effort. Thereafter, the plaintiff contacted counsel in Connecticut. The matter remained inactive, partially because the action was stayed when the defendant filed for bankruptcy. However, the plaintiff never came to this state to litigate the matter.
As stated previously, the defendant failed to make any contribution towards the child's medical expenses during the past decade. There is no question that there have been expenses. Unfortunately, the plaintiffs documentation is scant. Furthermore, she cannot accurately describe either the nature of the medical treatment or the amount of the expense incurred.
On September 29, 1994, the plaintiff filed an Application to Cite and Adjudge in Contempt wherein she essentially alleged the same acts contained in the instant motion. She never pursued that motion. On October 10, 1996, the defendant filed a Motion to Terminate Alimony and Support.
Connecticut procedure authorizes motions for contempt, one of the few vehicles available to enforce compliance with court orders. Acknowledging the broad equitable powers of this court, ". . . a finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) Sgarellino v. Hightower,13 Conn. App. 591, 595-96, 538 A.2d 1065 (1988). The burden of establishing a prima facie showing of contempt, in this case the willful disobedience of a court order, falls upon the plaintiff.
The question before the court is quite narrow. This court is required to examine the 1986 agreement and determine whether the reduction in the defendant's income relieves him of his obligation to pay alimony and child support. CT Page 12961
The November 1986 agreement was clear. The defendant was obligated to pay alimony and child support in accordance with a complex formula. This constituted a court order. There was no suggestion at trial that the provisions in that agreement were unfair or inequitable. Both parties were represented by counsel. Both agreed to each section of the agreement.
During her testimony, the plaintiff acknowledged that paragraph 5.3 of the separation agreement contemplated possible changes in calculations. There could be increases, or decreases, depending on the defendant's yearly income and the consumer price index. Unfortunately, in calculating her alleged arrearage, the plaintiff chose to rely upon the yearly increase in the consumer price index but ignored the defendant's loss of income. She cannot bifurcate the agreement. Nor can she now contend that the agreement was contingent upon yearly income verification. The plaintiffs suggestion would place an additional unintended condition in the original agreement.[4]
This court is guided by the general principles governing the construction of contracts. "A judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. . . . Sablosky v. Sablosky, 61 Conn. App. 66, 70, 762 A.2d 922
(2000), reversed on other grounds, 258 Conn. 713, 784 A.2d 890 (2001) "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction.
[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . ." (citation omitted) Issler v. Issler, 250 Conn. 226, 235, 737 A.2d 383 (1999).
The judgment of dissolution here is clear and unambiguous. The obligation to pay alimony and child support fluctuated with the defendant's income. The payment reduction provision was automatic and self-executing. Just as alimony ceased upon the plaintiffs re-marriage, alimony and child support were reduced by the defendant's economic situation. There was no requirement that the defendant seek the assistance of a court. See Eldridge v. Eldridge, 224 Conn. 523, 531,710 A.2d 757 (1998).
"When a judgment incorporates a separation agreement in accordance with CT Page 12962 a stipulation of the parties, it is to be regarded and construed as a contract." Mihalyak v. Mihalyak, 30 Conn. App. 516, 522, 620 A.2d 1327
(1993) (citations omitted.) This court cannot add conditions, however laudable, to the final judgment. Instead, it should enforce the terms of the original separation agreement, a contract crafted and adopted by the parties and approved by the court. D'Ascanio v. D'Ascanio, 237 Conn. 481,489-90, 678 A.2d 469 (1996); DeMaria v. DeMaria, 47 Conn. App. 729, 734,707 A.2d 741 (1998). Private settlement of marital financial affairs should be encouraged, not undermined.
Neither alimony nor child support accrued under the original judgment after 1990. See Stein v. Stein, 49 Conn. App. 536, 540, 714 A.2d 1272
(1998). Here the agreement was clear and self-executing. The defendant's obligation to make court ordered alimony and child support payments was contingent upon a number of variables. One of those variables was the level of his income. When his income dropped, his obligation changed accordingly.
The plaintiff's Motion for Contempt is denied.
 ___________________ JULIA DICOCCO DEWEY, JUDGE