******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MAYA BOREEN *v.* KEVIN A. BOREEN
## (AC 41155)

DiPentima, C. J., and Alvord and Diana, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court granting the defendant's motion to terminate alimony, to determine overpayments and to set a repayment schedule. The trial court found that the plaintiff was living with R, her boyfriend, within the meaning of the applicable statute (§ 46b-86 [b]), and, therefore, that the defendant's alimony obligation terminated under the terms of the parties' separation agreement, which had been incorporated into the dissolution judgment and provided that the defendant's alimony obligation would terminate on the date the court determined that the plaintiff commenced "living with another person." *Held:*

1. The trial court did not err in finding that the plaintiff was "living with another person" for purposes of § 46b-86 (b): although the plaintiff claimed that she and R maintained separate residences and were together less than all of the time, ample evidence supported the court's finding that the plaintiff was living with R, including evidence that the couple resided under the same roof for approximately half the week, took many meals together, regularly communicated by cell phone, and frequently traveled together, and that R provided for the plaintiff's health insurance coverage under his own policy as a result of the couple holding themselves out as being in a domestic partnership, and allowed the plaintiff to keep a rent-free art studio in his home, and even though the plaintiff and R maintained separate homes and did not sleep in the same residence every night, the plaintiff's living arrangements changed such that she no longer needed the same financial support as at the time of the original alimony order; moreover, the court properly relied on the fact that R provided the plaintiff with health insurance coverage in concluding that the plaintiff was living with him, as the plaintiff and R held themselves out as a couple who were in a nonmarital union as domestic partners when R added the plaintiff to his health insurance policy, and the court properly considered the attendant financial benefits the plaintiff received as a result of the free health insurance coverage when determining whether her financial needs changed as a result of her living with R such that the defendant's alimony obligation should be terminated.

2. The trial court did not err in finding that the only remedy available under the terms of the separation agreement, upon a finding that the plaintiff was "living with another person," was to terminate the defendant's alimony obligation: the provision of the separation agreement stating that the plaintiff shall be deemed to have been living with another person in the event a court makes a finding that the alimony should terminate or be reduced "pursuant to" § 46b-86 (b) did not reflect an intent to broadly incorporate all aspects of § 46b-86 (b), as the only remedy explicitly provided in the agreement upon a finding that the plaintiff commenced living with another person was to terminate alimony, the language in the agreement that alimony "shall" terminate when the plaintiff commenced living with another person was mandatory in nature, and the separation agreement treated cohabitation as an event akin to death or remarriage, both of which are events that ordinarily terminate a periodic alimony obligation; moreover, a finding that alimony could be modified upon a finding of cohabitation, as opposed to terminated, would be inconsistent with the structure of the separation agreement as a whole, which contained provisions governing discrete circumstances in which one or both parties could seek to modify the alimony obligation.

Argued April 23—officially released September 3, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Stanley Novack*, judge trial referee, rendered judgment dissolving the marriage; thereafter, the court, *Hon. Michael E. Shay*, judge trial referee, granted the motion filed by the defendant to terminate alimony, to determine overpayments and to set a repayment schedule, and the plaintiff appealed to this court; subsequently, the court, *Hon. Michael E. Shay*, judge trial referee, denied the motion for articulation filed by the plaintiff; thereafter, the plaintiff filed a motion for review with this court, which granted the plaintiff's motion for review but denied the relief requested. *Affirmed.*

*James H. Lee*, for the appellant (plaintiff).

*Thomas M. Shanley*, for the appellee (defendant).

*Opinion*

DIANA, J. The plaintiff, Maya Boreen, appeals from the judgment of the trial court granting the postjudgment motion filed by the defendant, Kevin A. Boreen, to terminate alimony, to determine overpayments, and to set a repayment schedule on the ground that, under the parties' separation agreement, the defendant's alimony obligation terminated upon the court's finding that the plaintiff was "living with another person." The plaintiff claims that the court (1) erred in finding that she was "living with another person" pursuant to General Statutes § 46b-86 (b),[1] and (2) improperly concluded that the only remedy available upon a finding that she was "living with another person" was to terminate the defendant's alimony obligation. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts, as found by the trial court, are relevant to this appeal. The twenty-four year marriage between the parties was dissolved on September 29, 2009. The parties executed a separation agreement, which was approved by the court and incorporated in the dissolution decree by reference. The separation agreement provides that the defendant was to pay alimony to the plaintiff "until the earliest of the [defendant's] death, the [plaintiff's] death, the [plaintiff's] remarriage or 'living with another person' as defined in [Article] 2.2 [of the separation agreement]." Article 2.2 of the agreement provides in relevant part: "The [defendant's] obligation to pay alimony shall terminate on the date . . . the [c]ourt determines [the plaintiff] commenced 'living with another person.' . . . For purposes of this Agreement, the [plaintiff] shall be deemed to have been 'living with another person' in the event a court of competent jurisdiction makes a finding that the alimony should terminate or be reduced pursuant to the provisions of [General Statutes] § 46b-8[6] (b)."[2]

In December, 2009, the plaintiff began dating Robert Rodriguez. On March 13, 2017, the defendant filed a motion to terminate alimony, to determine overpayments, and to set a repayment schedule, claiming that, although the plaintiff still maintained her own home, she had been living with Rodriguez within the meaning of § 46b-86 (b) since July, 2013, such that her financial needs had been altered. At the hearing on the defendant's motion, Rodriguez testified that, although he began dating the plaintiff in 2009, he had only owned and maintained a home in Wilton since July, 2013. The plaintiff's home, which she purchased in August, 2011, is also located in Wilton. Rodriguez testified that the couple spends "between three and four" nights together each week at one of their respective homes, but that neither of them contribute to the maintenance of the other's residence. He further testified that the plaintiff typically cooks for the couple twice per week and that

he pays for their meals when they eat out more than half, and possibly as much as 75 percent of the time. Further, the plaintiff, who works part-time as an artist, keeps a rent-free art studio at Rodriguez's home in Wilton.

Importantly, Rodriguez admitted that in approximately January, 2015, he added the plaintiff to his health insurance policy and indicated on the enrollment form that the plaintiff was his "domestic partner." Before receiving health insurance coverage as a domestic partner under Rodriguez' policy, the plaintiff's insurance company required her to pay annually a $6000 deductible and a 20 percent copay. Under Rodriguez' health insurance policy, the deductible is $750 per incident. The plaintiff's total estimated share of the health insurance premium payments that had been made on her behalf by Rodriguez was, at the time of trial, in excess of $26,000. Although Rodriguez testified that the plaintiff had agreed to reimburse him for her portion of the health insurance premium, that agreement was not reduced to writing and the plaintiff had made no reimbursement payments to Rodriguez at the time of the hearing on the defendant's motion.

The court granted the defendant's motion in a memorandum of decision dated October 31, 2017, finding that "at least since January, 2015, the parties have been living together, and that the arrangement has altered the financial needs of [the plaintiff] within the meaning of General Statutes § 46b-86 (b)." On that basis, the court terminated the defendant's alimony obligation. The court further determined that from January 1, 2015, until October 31, 2017, the defendant had paid alimony to the plaintiff in the amount of $358,216, and ordered the plaintiff to repay the overage in full in semiannual installments of $30,000 each without interest. On November 20, 2017, the plaintiff filed a motion for reargument and reconsideration, which the court denied on November 30, 2017. This appeal followed. Additional facts and circumstances will be set forth as necessary.

I

The plaintiff first claims that the court erred in finding that she had been "living with another person" within the meaning of § 46b-86 (b). Specifically, the plaintiff argues that the court erred in finding that she was living with Rodriguez because (1) they maintain separate residences and "are together less than all the time" and (2) the court improperly considered that Rodriguez had provided for her health insurance coverage under his own policy in making its determination about her living arrangements.[3] We are not persuaded.

The court made the following additional findings relevant to this claim: "In this case, the testimony and evidence clearly support a finding that [Rodriguez] and [the plaintiff] have entered into a long-time, committed,

and monogamous relationship that meets their emotional needs, and comes with significant financial benefits for the latter. The couple resides under the same roof for approximately half the week, take many of their meals together, regularly communicate by cell phone, and frequently travel together. Both described the relationship as exclusive, and [Rodriguez] called [the plaintiff] his 'best friend.' More importantly, he also described her as his 'domestic partner,' and, since January, 2015, he has made provision for her health insurance coverage under his own policy at no cost to her. For her part, on her Facebook page she has referred to the workshop at [Rodriguez'] home in Wilton as 'her studio' and posted photos of it and her artwork. Accordingly, the court finds that at least since January, 2015, the parties have been living together, and that the arrangement has altered the financial needs of [the plaintiff] within the meaning of General Statutes § 46b-86 (b)."

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Emerick* v. *Emerick*, 170 Conn. App. 368, 378, 154 A.3d 1069, cert. denied, 327 Conn. 922, 171 A.3d 60 (2017).

A

The plaintiff first argues that the court erred in finding that she was living with Rodriguez within the meaning of § 46b-86 (b) because they maintain separate residences and are together "less than all the time." We disagree.

Section 46b-86 (b) provides, in relevant part, that a court may modify a dissolution judgment and "suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modi-

fication, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party." Thus, "a finding of cohabitation requires that (1) the alimony recipient was living with another person and (2) the living arrangement caused a change of circumstances so as to alter the financial needs of the alimony recipient." *Fazio* v. *Fazio*, 162 Conn. App. 236, 240 n.1, 131 A.3d 1162, cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016).

Whether an individual is "living with another person" is a fact specific determination. *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 486, 678 A.2d 469 (1996). "The fact-finding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court. . . .

"A factual finding may not be rejected on appeal merely because the reviewing judges personally disagree with the conclusion or would have found differently had they been sitting as the factfinder. . .   A factual finding may be rejected by this court only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Kaplan* v. *Kaplan*, 186 Conn. 387, 391–92, 441 A.2d 629 (1982).

In *Kaplan*, our Supreme Court considered whether the trial court properly found that a couple was not living together pursuant to § 46b-86 (b) where, "(a)lthough at times the defendant slept in [her significant other's] bedroom . . . and, [he] would often take meals with the defendant and her children, they maintained completely separate households . . . ." (Internal quotation marks omitted.) Id., 390. Our Supreme Court concluded that, because the question of whether an individual is living with another person is a fact specific determination, it could not reject the trial court's finding that the couple was not living together as defined by § 46b-86 (b) because there was ample evidence in the record to support such a finding. Id., 392. Our Supreme Court, however, noted that there was ample evidence in the record to support the opposite finding as well, and that § 46b-86 (b) was "clearly intended by the General Assembly to apply to the situation alleged by the plaintiff." Id., 390–91. Indeed, the stated purpose of the bill which was eventually enacted as Public Acts 1977, No. 77-394, now § 46b-86 (b), was "[t]o correct the injustice of making a party pay alimony when his or her ex-spouse is living with a person of the opposite sex, without marrying, to prevent the loss

of support." H.B. 6174, 1977 Sess.

In the present case, we conclude that the trial court had ample evidence to support its finding that the plaintiff had been living with Rodriguez within the meaning of § 46b-86 (b) since January, 2015. The couple resided under the same roof for approximately half the week, took many of their meals together, regularly communicated by cell phone, and frequently traveled together. Rodriguez, moreover, provided for the plaintiff's health insurance coverage under his own policy as a result of the couple holding themselves out as being in a domestic partnership. Further, Rodriguez allows the plaintiff to keep a rent-free art studio at his home. The totality of these facts form a reasonable basis to support the court's finding that the plaintiff has been "living with another person" pursuant to § 46b-86 (b) since January, 2015. As our Supreme Court stated in *Kaplan*, § 46b-86 (b) was written broadly and was clearly intended by the legislature to encompass a factual situation such as the present case where, although the plaintiff and Rodriguez maintain separate homes and do not sleep in the same residence every night, the plaintiff's living arrangements have changed such that she no longer needs the same financial support as at the time of the original alimony order. See *Kaplan* v. *Kaplan*, supra, 186 Conn. 389.

B

The plaintiff next argues that the court improperly relied on the fact that Rodriguez provided her health insurance coverage in concluding that the plaintiff was living with him. We disagree.

In order to decide the merits of the defendant's motion, the court was required to perform a two part analysis to determine whether alimony should be terminated under the separation agreement. See *Fazio* v. *Fazio*, supra, 162 Conn. App. 240 n.1 (finding of cohabitation requires finding that alimony recipient was living with another person and living arrangement caused change of circumstances so as to alter financial needs of alimony recipient). The court enumerated the facts that it had found, which supported both a finding that the plaintiff was living with Rodriguez and a finding that that living arrangement had altered the plaintiff's financial needs. The court did not distinguish which facts it had found supported a finding under each prong of the analysis required by § 46b-86 (b).

There is no indication that the court conflated or misunderstood the factual findings that it was required to make in order to determine whether the couple was living together pursuant to § 46b-86 (b). See *De Almeida-Kennedy* v. *Kennedy*, 188 Conn. App. 670, 687, 205 A.3d 704 ("[w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will . . . assume that the trial court acted

properly" [internal quotation marks omitted]), cert. denied, 332 Conn. 909, 210 A.3d 566 (2019). Rather, it appears from the memorandum of decision that the court properly considered that the plaintiff and Rodriguez were holding themselves out as a couple who were in a nonmarital union as domestic partners, as they indicated when Rodriguez added the plaintiff to his health insurance policy, in finding that the couple was living together pursuant to § 46b-86 (b).

The court also properly considered the attendant financial benefits that the plaintiff received as a result of this free health insurance coverage, among other pertinent facts, when determining whether the plaintiff's financial needs were changed as a result of her living with Rodriguez such that the defendant's alimony obligation should be terminated. We, therefore, conclude that the court did not err in considering the couple's health insurance policy when making its finding that the plaintiff was living with another person. For the foregoing reasons, we conclude that the trial court did not err in finding that the plaintiff was living with Rodriguez pursuant to § 46b-86 (b).

## II

The plaintiff next claims that the court improperly determined that, upon finding that the plaintiff was living with another person, the only remedy available under the terms of the separation agreement was to terminate the defendant's alimony obligation. We agree with the trial court that the sole remedy available under the terms of the separation agreement upon a finding that the plaintiff was living with another person was to terminate alimony.

The following additional facts are relevant to this claim. Article 2 of the separation agreement between the parties is titled "Alimony." Article 2.1 (a) of the separation agreement provides that the defendant's alimony obligation continues "until the earliest of the [defendant's] death, the [plaintiff's] death, the [plaintiff's] remarriage or living with another person as defined in [Article] 2.2 . . . ." (Internal quotation marks omitted.) Article 2.2 of the agreement provides in relevant part: "The [defendant's] obligation to pay alimony shall terminate on the date . . . the [c]ourt determines [the plaintiff] commenced 'living with another person.' . . . For purposes of this Agreement, the [plaintiff] shall be deemed to have been 'living with another person' in the event a court of competent jurisdiction makes a finding that the alimony should terminate or be reduced pursuant to the provisions of [General Statutes] § 46b-8[6] (b)." Articles 2.3, 2.4, and 2.6 provide for discrete circumstances in which the defendant or the plaintiff may bring a motion to modify the defendant's alimony obligation, none of which include a finding that the plaintiff is living with another person.[4]

After concluding that the plaintiff was living with Rodriguez under circumstances that altered her financial needs, the court then turned to the relief available to the defendant under the agreement. The trial court concluded that "together as a whole, Articles 2.1 (b) and 2.2 are clear and unambiguous and provide that where a court finds that the recipient of the alimony is 'living with another person' as defined by General Statutes § 46b-86 (b), the obligation to pay alimony terminates effective as of the date that the living with another person commenced . . . and that neither party has claimed any ambiguity in the agreement itself or requested an opportunity [to] offer any credible extrinsic evidence as to the meaning of the relevant provisions thereof." (Citation omitted.)

The court reasoned that "[w]hile the language of the last sentence of Article 2.2 is somewhat imprecise (i.e. 'should terminate or be reduced'), nevertheless, given the preceding language, the court finds that the only logical explanation is that [the reference] is merely [intended to direct] the court to apply both the factual and financial analysis called for in General Statutes § 46b-86 (b). Any other reading would simply fly in the face of the clear intent of the parties to terminate alimony in such circumstances, and that it was never intended to give the court the option to modify the alimony award. Were the court to apply that literal reading, it would render those remedial provisions of the agreement that call for the termination of the alimony and the triggering of obligation to repay alimony meaningless." (Emphasis omitted.)

We begin our analysis by setting forth the applicable standard of review and principles of law. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009).

"If a contract is unambiguous within its four corners,

the determination of what the parties intended by their contractual commitments is a question of law [and our review is plenary]. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010).

Accordingly, "[t]he threshold determination in the construction of a separation agreement . . . is whether, examining the relevant provision in light of the context of the situation, the provision at issue is clear and unambiguous, which is a question of law over which our review is plenary. . . . Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citations omitted; internal quotation marks omitted.) *Isham* v. *Isham*, supra, 292 Conn. 181–82.

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383–84, 107 A.3d 920 (2015).

The plaintiff contends that the parties intended to incorporate the entirety of § 46b-86 (b) into the separation agreement, including the alternative remedial measures provided for in the statute, when they used the language "alimony should terminate or be reduced pursuant to the provisions of General Statutes § 46b-8[6] (b)." (Emphasis omitted.)

In *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 187–88, 112 A.3d 144 (2015), our Supreme Court rejected a similar argument from the plaintiff, who argued that "the agreement's reference to § 46b-86 (b) means that the alimony award is not terminated upon cohabitation, although that is the sole remedy set forth in the agreement, because any reference to § 46b-86 (b) in the agreement means that the court has the authority in the event of

cohabitation to modify the amount of, to suspend or to terminate alimony, despite any limitation of or delineation of a remedy in the agreement." (Internal quotation marks omitted.) The provision at issue in *Nation-Bailey* read as follows: "Unallocated alimony and child support shall be paid until the death of either party, the [plaintiff's] remarriage or cohabitation as defined by . . . § 46b-86 (b), or until August 1, 2011." (Internal quotation marks omitted.) Id., 185.

Our Supreme Court rejected the plaintiff's argument and found that "the trial court lacked any remedial powers to suspend the defendant's unallocated support obligation for the duration of the plaintiff's cohabitation because the plain language contained within . . . the agreement permanently terminated the defendant's unallocated support obligation upon that cohabitation." Id., 191. Our Supreme Court reasoned that "given the provision's use of the word until without further qualification," while requiring the payment of unallocated support "until the death of either party, the [plaintiff's] remarriage or cohabitation as defined by . . . § 46b-86 (b), or until August 1, 2011," the agreement was clear and unambiguous, and provided for "permanent termination of the unallocated support obligation [as] the sole remedy upon cohabitation by the plaintiff . . . . [T]he use of the word until, standing alone, indicates that the defendant's unallocated support obligation was terminated upon the plaintiff's cohabitation because the obligation cease[d] to exist at that point of time or . . . event. Black's Law Dictionary (6th Ed.1990); see also *In re Marriage of Schu*, 231 Cal. App. 4th 394, 396, 179 Cal. Rptr. 3d 886 (2014) (interpreting marital settlement agreement reserving court's jurisdiction to award spousal support until wife is released from prison and holding that jurisdiction did not expire immediately after wife's release where motion was filed prior to her release and hearings on that motion had been continued) . . . ." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) Id., 93–94.

The plaintiff urges us to adopt the reasoning of this court in *Fazio* v. *Fazio*, supra, 162 Conn. App. 245, in which we concluded that the language from a similar provision in the parties' separation agreement did not convey the clear and precise intent of the parties. In *Fazio*, the provision at issue was substantially similar to the language from the present case, stating, in relevant part: "Commencing on June 1, 2006, the [defendant] shall pay to the [plaintiff] unallocated alimony and child support in cash until the death of either party, the remarriage or cohabitation of the [plaintiff] *pursuant to* Section 46b-86 (b) of the . . . General Statutes, or May 31, 2013, whichever event shall first occur . . . ." (Emphasis added; internal quotation marks omitted.) Id., 238. In concluding that the agreement was ambiguous, this court reasoned that "our Supreme

Court has indicated, albeit in dicta, that the use of the phrase 'pursuant to' in a virtually identical provision of a separation agreement might be reflective of an intent to broadly incorporate all aspects of § 46b-86 (b), not just the definitional language. Conversely, if the parties had intended to reference § 46b-86 (b) solely for definitional purposes, they could have used the phrase 'as defined by.' Thus, our Supreme Court has suggested that the use of 'pursuant to' may show an intent by the parties to incorporate more than the definition of 'cohabitation' from § 46b–86 (b)." Id., 246.

We conclude that, unlike the provision at issue in *Fazio*, the provision's use of "pursuant to" in the present case does not reflect an intent to broadly incorporate all aspects of § 46b-86 (b) and, thus, agree with the trial court that the parties clearly and unambiguously intended for the defendant's alimony obligation to terminate upon a court's finding that the plaintiff had commenced living with another person. The only remedy explicitly provided for in the separation agreement upon such a finding is to terminate the defendant's alimony obligation. We are unpersuaded, moreover, that the agreement's use of the words "pursuant to" conveys an intent to incorporate the remedial provisions of § 46b-86 (b) as suggested in *Fazio*. As we noted in *Fazio*, the broader language *may* indicate an intent to incorporate the statute. We cannot conclude, however, that the parties in the present case intended for the words "pursuant to" to incorporate the statute into the provision in its entirety.

In the present case, the language employed by the parties in the separation agreement to direct terminating the alimony obligation is mandatory, not permissive. The parties first agreed that alimony shall continue "until" the plaintiff commences living with another person. The word "until" suggests that the obligation ceases to exist at a certain point in time, specifically, when the plaintiff begins living with another person. Further, the agreement provides that alimony "shall" terminate when the plaintiff commenced living with another person. The use of the word "shall" usually connotes a requirement, unlike the word "may," which implies some degree of discretion. See *Kingdomware Technologies, Inc.* v. *United States*, U.S. , 136 S. Ct. 1969, 1977, 195 L. Ed. 2d 334 (2016). Thus, like the separation agreement in *Nation-Bailey*, the agreement in the present case "treats cohabitation as an event akin to death or remarriage, both of which are events that ordinarily terminate a periodic alimony obligation absent an express provision to the contrary in the court's decree or incorporated settlement agreement." *Nation-Bailey* v. *Bailey*, supra, 316 Conn. 195.

Further, as noted by the trial court, a finding that alimony could be modified upon a finding of cohabitation, as opposed to terminated, would be inconsistent

with the structure of the separation agreement as a whole, which contains separate provisions governing discrete circumstances in which one or both parties could seek to modify the alimony obligation. We, therefore, agree with the trial court that the parties clearly and unambiguously intended that the defendant's alimony obligation be terminated upon a court's finding that the plaintiff is living with another person.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 46b-86 (b) provides in relevant part: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a spouse, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other spouse, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

[2] Article 2.2 of the separation agreement references General Statutes § 46b-84 (b), titled "Parents' obligation for maintenance of minor child. Order for health insurance coverage." Although neither party mentions this apparent error, § 46b-84 (b) is irrelevant to the subject of Article 2.2, alimony, and both parties refer to § 46b-86 (b) throughout their appellate briefs. We, therefore, correct the quoted provision to reflect the correct statutory reference.

[3] The plaintiff also argues that the court improperly considered the romantic nature of the plaintiff's relationship with Rodriguez in finding that the plaintiff was living with another person pursuant to § 46b-86 (b). The plaintiff urges us to adopt the reasoning of this court in *Spencer* v. *Spencer*, 177 Conn. App. 504, 520, 173 A.3d 1 (2017), ("because the definition of cohabitation in § 46b-86 (b) has only two elements, neither of which is evidence of a romantic or sexual relationship, the defendant was not required, pursuant to the dissolution judgment, to present evidence of a romantic or sexual relationship"), cert. granted, 328 Conn. 903, 177 A.3d 565 (2018). On January 31, 2018, our Supreme Court granted the plaintiff's petition for certification to appeal. *Spencer* v. *Spencer*, 328 Conn. 903, 177 A.3d 565 (2018). One of the issues certified by our Supreme Court was: "Did the Appellate Court properly affirm the trial court's finding of cohabitation on the basis of a definition of cohabitation that does not require a romantic or sexual relationship between the alimony recipient and the individual with whom they reside?" (Internal quotation marks omitted.) Id. On August 5, 2019, our Supreme Court dismissed the appeal following the death of the plaintiff and the failure of the administrator to file a motion to substitute pursuant to Practice Book § 62-5.

We, however, need not reach this issue in the present case. Whether the plaintiff was "living with another person" is a factual determination to be made by the trial court that will not be disturbed on appeal unless the finding is clearly erroneous in light of the evidence and the pleadings in the record as a whole. See, e.g., *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 678 A.2d 469 (1996). As discussed in part I of this opinion, we conclude that there was ample evidence in the record for the court to have concluded that the plaintiff was living with Rodriguez, regardless of the nature of the relationship between them.

[4] Article 2.3 (b) provides in relevant part that the defendant "shall not be entitled to bring any motion . . . the effect of which is to downward modify his obligation to pay alimony . . . unless [the plaintiff] shall have gross annual earned income of at least forty thousand . . . dollars . . . in any calendar year . . . ." Article 2.3 (d) provides that "[a]ny decrease in the [defendant's] income resulting from his unilateral change of employment shall not constitute a significant change in circumstances justifying a modification of alimony." Article 2.4 provides in relevant part that "[u]pon motion of either party, the court shall retain jurisdiction to modify the definition of 'gross annual earned income' . . . ." Finally, Article 2.6 provides in relevant part: "In the event the [defendant] is terminated from his employment

and receives a severance package, which caused his gross annual earned income to exceed $775,000 . . . the [plaintiff] shall have the right to move to modify the earning cap subject to alimony of $775,000 in the year in which the severance package is received." (Internal quotation marks omitted.)

---